**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CRISTOBAL RODRIGUEZ BENITEZ,
*Petitioner-Appellant,*

v.

SYLVIA GARCIA, Warden,
*Respondent-Appellee.*

No. 04-56231

D.C. No.
CV-02-00489-DMS

ORDER AND
OPINION

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, District Judge, Presiding

Argued July 13, 2005
Submitted January 22, 2007
Pasadena, California

Filed July 16, 2007

Before: Jerome Farris, Dorothy W. Nelson, and
Richard C. Tallman, Circuit Judges.

Per Curiam Opinion

8509

## COUNSEL

Barbara Strickland, San Diego, California, for the appellant.

Matthew Mulford, Deputy Attorney General, San Diego, California, for the appellee.

## ORDER

The panel opinion filed on January 22, 2007, amended February 8, 2007, is withdrawn and a substitute opinion is filed simultaneously with this order. The petition for rehearing and for rehearing en banc is denied as moot without prejudice to renewal by either party following filing of the new opinion.

## OPINION

PER CURIAM:

Cristobal Rodriguez Benitez was arrested in Venezuela and extradited to the United States. Benitez was tried and convicted of murder and sentenced to an indeterminate sentence of fifteen years to life (in addition to four years for the use of a firearm). Benitez petitioned for a writ of habeas corpus, arguing that his sentence could not exceed thirty years because of a sentence limitation contained in the extradition decree from the Supreme Court of Venezuela and the Venezuelan Ministry of Foreign Affairs. The district court denied his

petition; Benitez appealed. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(c). We affirm.

# I

Benitez, a Mexican citizen, was convicted of murdering a man involved in an altercation with Benitez's brother in San Diego, California. After the shooting, Benitez fled to Venezuela. On June 25, 1997, the United States requested that, pursuant to the U.S.-Venezuela extradition treaty, Venezuela extradite Benitez to face charges in California. The extradition treaty provides:

> [T]he Contracting Parties reserve the right to decline to grant extradition for crimes punishable by death and life imprisonment. Nevertheless, the Executive Authority of each of the Contracting Parties shall have the power to grant extradition for such crimes upon the receipt of satisfactory assurances that in case of conviction the death penalty or imprisonment for life will not be inflicted.

Treaty of Extradition, Jan. 19-21, 1922, U.S.-Venez., Art. IV, 43 Stat. 1698, T.S. No. 675.

On June 25, 1997, the Venezuelan Ministry of Foreign Affairs—upon receiving the request from the United States to extradite Benitez—contacted the U.S. Embassy and asked for information related to the sentence Benitez might face if convicted in an American court. On November 6, 1997, the U.S. Embassy responded that under California law "if convicted of murder, and if murder in the first degree is found, Cristobal Rodriguez Benitez would receive a sentence of incarceration of 25 years to life." The Ministry indicated to the Venezuelan Supreme Court that the response meant that "in principle" Benitez would not be subject to a sentence of greater than thirty years.

On August 17, 1998, the Supreme Court of Venezuela approved the extradition of Benitez, but stated that if an American court convicts Benitez it "shall not . . . impose[ ] a penalty involving [the] death penalty or life imprisonment or punishment depriving his freedom for more than thirty years." The Ministry of Foreign Affairs in Venezuela received this decision and communicated to the United States that Benitez's extradition was "conditioned to the understanding that [Benitez] will not be sentenced to . . . life in prison or incarceration for more than thirty (30) years." Benitez was extradited from Venezuela to the United States on August 28, 1998.

On November 5, 1998, the San Diego County District Attorney filed an information alleging that Benitez committed murder and personally used a firearm in violation of California Penal Code § 12022.5(a). On July 16, 1999, about the time that Benitez's trial was to commence, the Venezuelan Embassy wrote to the United States Department of Justice stating its concern that the sentence Benitez faced "may violate the provisions of the Extradition Treaty" between the United States and Venezuela and might also violate "the conditions established in the sentence of the Supreme Court of Venezuela which approved the extradition request presented by the Government of the United States."

Benitez raised this issue at trial in California state court without success. The day before he was to be sentenced, the United States Department of State faxed a letter to the District Attorney of San Diego County indicating that even though the State Department did "not believe the Office of the District Attorney is required to make such a recommendation," the Department of State still believed it would be wise if Benitez were not issued a life sentence. Benitez was given an indeterminate sentence of fifteen years to life with an enhancement for the personal use of a firearm. At the sentencing hearing, the state trial court indicated that Benitez's argument—that

the sentence violated the terms of his extradition—was not ripe for review.

Benitez's state habeas petitions were denied. The federal magistrate judge determined that Benitez's petition challenging his sentence had merit, but was not ripe because Benitez might not be forced to serve jail time exceeding thirty years. The district court decided that the dispute was ripe but that Benitez failed to demonstrate that his sentence violated clearly established federal law.

## II

**[1]** Benitez's extradition was conditioned upon a limitation on what sentence could be *entered* against him as well as what sentence he could *serve*. When the Venezuelan Ministry of Foreign Affairs informed the U.S. Embassy of the Venezuelan Supreme Court's decision to extradite Benitez, the Ministry indicated that the extradition was "conditioned to the understanding that the aforementioned citizen will *not be sentenced* to death or life in prison or incarceration for more than thirty (30) years." (emphasis added). Benitez's extradition decree also limited what sentence could be issued as well as what sentence could be served.

**[2]** This dispute became ripe as soon as the state court entered a sentence of fifteen years to life. *Cf. United States v. Campbell*, 300 F.3d 202, 211 (2d Cir. 2002) (recognizing a difference between extradition terms limiting what sentence could be entered by the receiving state's courts and what sentence the receiving state could force the prisoner to serve).

## III

We review the district court's denial of a writ of habeas corpus de novo. *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996). Because Benitez filed his petition after the effective date of the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), it provides the governing standard of review. *See Woodford v. Garceau*, 538 U.S. 202, 207 (2003). For a writ to issue under AEDPA we must find that the state court's decision was either contrary to or an objectively unreasonable application of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see also Fry v. Plilar*, ___ S. Ct. ___, 2007 WL 1661463 at *5 (June 11, 2007). Clearly established federal law is confined to the Court's holdings as of the date of the state court decision. *Abdul-Kabir v. Quarterman*, 127 S. Ct. 1654, 1682 (2007).

**[3]** In *United States v. Rauscher*, 119 U.S. 407 (1886), and *Johnson v. Browne*, 205 U.S. 309 (1907), the Supreme Court set forth principles for interpreting extradition treaties and analyzed the effect of limitations on what offenses may be punished by the extraditing country. Benitez fails to establish that the state court's decision was an objectively unreasonable application of *Rauscher*'s and *Browne*'s holdings.

**[4]** *Rauscher* established the doctrine of specialty, 119 U.S. at 412, which provides that an extradited defendant may not be prosecuted "for any offense other than that for which the surrendering country agreed to extradite." *United States v. Andonian*, 29 F.3d 1432, 1434-35 (9th Cir. 1994) (citations and quotations omitted). In *Rauscher*, the defendant was extradited from Great Britain for the crime of murder but was prosecuted for assault. 119 U.S. at 409-21. The Court held that he could "only be tried for one of the offenses described in [the extradition] treaty, and for the offense with which he is charged in the proceedings for his extradition." *Id.* at 430.

In *Browne*, a defendant who was convicted in the United States of conspiracy to defraud the government fled the country and was extradited from Canada under a treaty which did not cover conspiracy. 205 U.S. at 310-11. Because of the treaty's limitations, Canadian authorities surrendered the defendant for another offense but not for the conspiracy charge. *Id.*

at 310-12. The Supreme Court, looking to the agreed-upon terms of extradition and to the relevant treaty language, refused to uphold a reinstated conviction on the conspiracy charge. *Id.*

[5] *Rauscher* and *Browne* address limitations on charged offenses; here, the extradition decree attempts unilaterally to limit Benitez's sentence. No Supreme Court decision addresses this issue. The state court's decision was not contrary to clearly established federal law since to decide otherwise would have required an extension of the specialty doctrine. *Cf. Carey v. Musladin*, 127 S. Ct. 649, 653 (2006) (reaffirming that habeas relief is appropriate only where a state court's decision "was contrary to or involved an unreasonable application of [the Supreme] Court's applicable *holdings*" (emphasis added)). Only if the refusal to extend *Rauscher*'s and *Browne*'s holdings was objectively unreasonable must Benitez be granted a writ. *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

Agreed-upon sentencing limitations are generally enforceable. *See, e.g.*, *Campbell*, 300 F.3d at 211-12. Though the Supreme Court has not specifically addressed them, *Rauscher* states that "[i]t is unreasonable that the country of the asylum should be expected to deliver up such person to be dealt with by the demanding government without any limitation, implied or otherwise, upon its prosecution of the party." 119 U.S. at 419.

The U.S.-Venezuela extradition treaty expressly provides for extraditions conditioned on sentencing limitations, allowing the extraditing country to extract assurances that "the death penalty or imprisonment for life will not be inflicted." *See* Treaty of Extradition, 43 Stat. 1698, T.S. No. 675. Agreed-upon sentencing limitations should be enforced.

[6] However, *Rauscher* and *Browne* interpret negotiated agreements to extradite, not unilaterally imposed conditions.

Venezuela could have refused extradition of Benitez until the United States agreed to the sentencing limitation. Instead, Venezuela relinquished custody. Refusing to extend Supreme Court holdings governing limitations on charged offenses to unilaterally imposed sentencing conditions was not objectively unreasonable, and therefore AEDPA requires us to leave the decision of the California court undisturbed. *See Lockyer*, 538 U.S. at 75. Benitez is not entitled to habeas relief.

**AFFIRMED**.