**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KY TONY NGO,
          *Petitioner-Appellant,*

v.

G. J. GIURBINO, Warden,
          *Respondent-Appellee.*

No. 08-55564

D.C. No.
2:05-cv-07975-
DDP-RC

OPINION

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted
May 7, 2010—Pasadena, California

Filed July 11, 2011

Before: John T. Noonan, Richard R. Clifton, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Clifton;
Partial Concurrence and Partial Dissent by Judge Noonan

## COUNSEL

Benjamin P. Lechman, San Diego, California, for the appellant.

David C. Cook, Deputy Attorney General, Los Angeles, California, for the appellee.

---

**OPINION**

CLIFTON, Circuit Judge:

Ky Tony Ngo was convicted by a California court of one count of first degree murder, one count of conspiracy to commit murder, and six counts of attempted premeditated murder, all arising from shootings during two gang-related car chases on the same night. The district court denied Ngo's petition for writ of habeas corpus under 28 U.S.C. § 2254. On appeal, Ngo argues that his convictions were not supported by sufficient evidence. He also contends that the prosecution's use of peremptory challenges to strike African American jurors violated his rights under the Equal Protection Clause of the Fourteenth Amendment. Applying the deference owed in federal habeas corpus proceedings to state court rulings, we conclude that the state court findings and conclusions on these matters were not unreasonable. We affirm.

## I. Background

On the night of July 22-23, 1995, Ngo and six other members of the Asian Boyz gang (collectively, "the defendants") decided to find and shoot rival gang members. They set out in two vehicles, one of them a Honda CRX belonging to Ngo. Ngo rode in the front passenger seat of his CRX.

The defendants spotted what they believed to be two rival gang members exiting a convenience store, entering a parked Toyota Tercel, and then driving out of the store parking lot. The defendants pursued and fired numerous shots at the Tercel and its occupants.

In addition to the two individuals seen exiting the convenience store, there were three passengers in the backseat of the Tercel. Five of the six counts of attempted murder on which Ngo was ultimately convicted were based on the five occupants of the Tercel, including the three passengers in the backseat. Ngo challenges the sufficiency of the evidence regarding the three counts pertaining to the backseat passengers. In particular, he contends that there was not sufficient evidence that he was aware of the three backseat passengers and thus not sufficient evidence that he had the specific intent required to convict him for attempted murder of those three passengers.

Later that night, the defendants, including Ngo, initiated a second gun fight with the occupants of a Nissan Maxima, killing one of the occupants. This attack resulted in the murder conviction and the sixth attempted murder conviction.

During jury selection, the prosecution exercised peremptory challenges to exclude five African American jurors. Defense counsel objected to the strikes on the basis that they were racially motivated. The trial court accepted the prosecution's explanations for the challenges as race-neutral and denied the objection.

On direct appeal, the California Court of Appeal affirmed the convictions in a reasoned decision, and the California Supreme Court denied review. Ngo's state court petitions for habeas corpus were also denied. Ngo subsequently filed a federal petition for writ of habeas corpus. The district court denied the petition, and Ngo timely appealed.

## II. Discussion

Two issues raised by Ngo's petition were certified for appeal under 28 U.S.C. § 2253: (1) the sufficiency of the evidence for the three attempted murder convictions relating to

the backseat passengers, and (2) the allegedly improper use of peremptory challenges by the prosecution.

We review de novo a district court's denial of a petition for writ of habeas corpus. *Rodriguez Benitez v. Garcia*, 495 F.3d 640, 643 (9th Cir. 2007) (per curiam). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal courts apply a deferential standard of review and may grant a writ of habeas corpus only if the state court's judgment was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence in the State court proceeding." 28 U.S.C. § 2254(d).

## A. *Sufficiency of the Evidence*

**[1]** Under California law, the crime of attempted murder requires specific intent to kill each alleged victim. *People v. Smith*, 124 P.3d 730, 734 (Cal. 2005). As the California Court of Appeals observed in its decision affirming Ngo's convictions, "when shots are fired toward a group of people, the jury may draw a reasonable inference from all the circumstances that the shooter intended to kill every person in the group." *People v. Roeung*, No. B132070, 2003 WL 1904695, at *22 (Cal. Ct. App. Apr. 21, 2003) (citing *People v. Bland*, 48 P.3d 1107, 1118-20 (Cal. 2002)). "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) (quoting *United States v. Lewis*, 787 F.2d 1318, 1323 (9th Cir. 1986), *amended on denial of reh'g*, 798 F.2d 1250 (9th Cir. 1986)); *see also United States v. Cordova Barajas*, 360 F.3d 1037, 1041 (9th Cir. 2004) ("[C]ircumstantial evidence alone can be sufficient to demonstrate a defendant's guilt.").

In reviewing the sufficiency of evidence, we may grant habeas relief only if "no rational trier of fact could have found

proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *see also McDaniel v. Brown*, ___ U.S. ___, 130 S. Ct. 665, 673 (2010); *People v. Johnson*, 606 P.2d 738, 750-51 (Cal. 1980). In this review, all evidence must be considered in the light most favorable to the prosecution, and we presume "that the trier of fact resolved any [conflicting inferences] in favor of the prosecution." *Jackson*, 443 U.S. at 326. Furthermore, "[a]fter AEDPA, we apply the standards of *Jackson* with an additional layer of deference" to state court findings. *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).

**[2]** Evidence was presented at trial regarding the defendant's motivation to kill opposing gang members. Ngo had the opportunity to observe the car and its occupants while it was parked in the convenience store lot and throughout the duration of the car chase. In fact, a high beam light was shining on the Tercel during the chase, and Ngo's CRX "came alongside" the Tercel before the shots were fired. A reasonable jury could have inferred from the circumstantial evidence of visibility and the number of shots fired that Ngo had the required specific intent to kill all five passengers in the Tercel.

The California Court of Appeal so concluded:

> Inferably appellants had ample opportunity while observing the Tercel at the store and during the chase to observe there were additional occupants in the Tercel. There was no specific evidence they could not be seen. In light of all the circumstances including appellants' purpose to look for gang members to shoot, the victims' close presence together in the confines of a Tercel, and the number of shots fired, the jury could reasonably conclude appellants shared a specific intent to kill each of the attempted murder victims.

*Roeung*, 2003 WL 1904695, at *23.

Although it might have been possible to draw a different inference from the evidence, we are required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326 ("[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.").

**[3]** The record does not compel the conclusion that no rational trier of fact could have found proof of guilt, including specific intent to kill the three backseat passengers, especially considering the double deference owed under *Jackson* and AEDPA to state court findings. More precisely, the record does not require us to conclude that the California Court of Appeal's determination that there was sufficient evidence was unreasonable. *See Juan H.*, 408 F.3d at 1274-75. Accordingly, we affirm the district court's denial of Ngo's petition as to the attempted murder convictions.[1]

### B.   Peremptory Challenges

We next turn to Ngo's claim that the prosecution violated the Fourteenth Amendment by peremptorily striking five African American jurors on the basis of race.

During *voir dire*, defense counsel raised two objections under *People v. Wheeler*, 583 P.2d 748 (Cal. 1978), the Cali-

---

[1]Ngo has also argued that his convictions for murder and for one count of attempted murder in connection with the shots fired at the occupants of the Maxima were not supported by sufficient evidence, but he was not granted a certificate of appealability by the district court on those issues. We conclude that Ngo has not made the required substantial showing of the denial of a constitutional right as to those arguments, *see* 28 U.S.C. § 2253(c)(2), and we decline to expand the certificate to those issues. *See* Ninth Circuit Rule 22-1(c).

fornia counterpart to the three-step framework of *Batson v. Kentucky*, 476 U.S. 79, 96-98 (1986), used to evaluate whether the prosecution's peremptory strikes resulted from racially discriminatory motives. *See Tolbert v. Gomez*, 190 F.3d 985, 987 (9th Cir. 1999). Defense counsel raised the first *Wheeler* objection after the prosecutor struck four African Americans from the venire, and raised the second *Wheeler* objection when the prosecutor excused a fifth African American juror. The trial judge concluded that Ngo had made a *prima facie* case of racial discrimination and requested an explanation from the prosecutor.

The prosecutor offered race-neutral justifications for striking each of the five African American jurors. The first juror had been on five previous juries, three of which were hung. The second and third jurors expressed a preference for a life sentence without parole over the death penalty. The fourth juror had a law degree and psychology background, and the prosecutor said she was concerned the defense might call psychologists or psychiatrists as witnesses. Asked by the trial judge for an explanation as to the fifth juror, the prosecutor responded that the juror indicated in his questionnaire that he had been attacked by a security officer at a mini-mart, was arrested, and had sued over the incident. The prosecutor did not want a juror who felt he had been wrongfully accused of a crime. Additionally, the prosecutor explained that the fifth juror's responses regarding a gun purchase indicated to the prosecutor that the prospective juror shared the defendants' attitude about guns.

Ngo contends that the prosecutor's reasons were pretextual. This allegation implicates *Batson*'s step three, where the court evaluates whether the defendant has met the burden of showing purposeful discrimination in light of the proffered justifications. *Kesser v. Cambra*, 465 F.3d 351, 359 (9th Cir. 2006) (en banc); *Batson*, 476 U.S. at 98.

**[4]** The trial judge questioned the prosecutor before concluding that the prosecutor's explanations were not pretextual,

and this finding is "entitled to appropriate deference." *Cook v. LaMarque*, 593 F.3d 810, 815 (9th Cir. 2010) (affording deference to the trial court's factual findings upon consideration of the prosecutor's proffered justifications); *see Felkner v. Jackson*, ___ U.S. ___, 131 S. Ct. 1305, 1307 (2011). Moreover, on review, the district court evaluated the *voir dire* transcript, conducted a comparative juror analysis where possible, and found no inconsistencies. *See generally Miller-El v. Dretke*, 545 U.S. 231, 240-41 (2005) (favoring a comparative juror analysis as a means of proving purposeful discrimination); *see also Kesser*, 465 F.3d at 361 (noting that the *voir dire* transcript is adequate for conducting a comparative analysis). Neither do we. At least one other prospective juror who expressed a preference for imposing life was stricken, at least one other juror whose answers indicated that service would result in a hung jury was stricken, and jurors who had relatives who were wrongfully accused of a crime were stricken from the jury. There does not appear to have been another juror with a law degree and background in psychology, but striking a juror who is "overly educated" is sufficiently race-neutral to shift the burden back on the defendant to prove purposeful discrimination. *See McClain v. Prunty*, 217 F.3d 1209, 1220 (9th Cir. 2000). The defendant made no such showing of purposeful discrimination here.

**[5]** Accordingly, we agree with the district court that the state trial court's determination at *Batson* step three was not unreasonable. We affirm the district court's denial of Ngo's petition as to the peremptory challenges.

## III.  Conclusion

The judgment of the district court denying Ngo's petition for writ of habeas corpus is affirmed.

**AFFIRMED.**

NOONAN, Circuit Judge, concurring and dissenting:

I concur in the opinion of the majority except as to its affirmance of Ngo's convictions of attempted murder.

In its brief on appeal and in its oral argument to us, the state did not rely on "the kill zone" approach adopted by *People v. Bland*, 28 Cal. 4th 313, 329-30 (2002), perhaps because it is not clear that the front and back seats of the Tercel could be treated as a single area. The state accepted the burden of showing that Ngo knew that there were human beings in the back seat of the Tercel. The state's major difficulty is that the opinion of the Court of Appeal describes the attack less as a battle of men than as a battle of cars.

Relying on the testimony of the accomplice Dinh, who was in a rear seat in the Toyota Supra, the court of appeal quoted from the record:

> Why did you want to follow these people? [¶] [A:] Because we thought that they were from another gang. . . . [¶] [Q:] What was going to happen? [¶] [A:] I knew that we were going to shoot at them. [¶] [Q:] Why? [¶] [A:] Because they were just from another gang." Asked whether he saw other people in the car, Dinh replied, "I can't remember."

The court of appeal then stated:

> Although this testimony might be construed to refer only to two victims, the references to "they" and "them" were ambiguous, and Dinh's failure to remember other persons might be construed as evasive. Inferably appellants had ample opportunity while observing the Tercel at the store and during the chase to observe there were additional occupants in the Tercel. There was no specific evidence they could not be seen. In light of all the circumstances

including appellants' purpose to look for gang mem-
bers to shoot, the victims' close presence together in
the confines of a Tercel, and the number of shots
fired, the jury could reasonably conclude appellants
shared a specific intent to kill each of the attempted
murder victims.

The court of appeals' opinion draws positive proof from
negatives. "There was no specific evidence they could not be
seen," that court says, going on to infer that they were seen.
Dinh, the state's only witness, spoke of the two who had gone
to the store and returned, as "they." The court of appeal finds
the "they" ambiguous; Dinh could have meant to include the
three he hadn't mentioned. When Dinh testifies that he does
not remember the number, the court of appeal says his testi-
mony "might be construed as evasive." So the state's want of
evidence as converted into evidence by discrediting the state's
only witness to the shooting. If deference to these "findings"
of the court of appeal is required by AEDPA or Supreme
Court precedent, federal review of petitions of habeas corpus
is reduced to an empty formality.

That "they" and "their" may be construed as ambiguous
does not constitute evidence beyond a reasonable doubt that
any attacker knew there were people in the back seat. Dinh's
evasion is not convertible into positive evidence. The absence
of evidence that the back-seat three could not be seen cannot
be turned into evidence that they were seen. The purpose of
Ngo's gang, to shoot rivals, does not establish Ngo's knowl-
edge that there were three in the back seat to be shot.

In *People v. Lee*, 31 Cal.4th 613, 623-24 (2003), the Cali-
fornia Supreme Court spoke on the state of mind needed by
an aider and abettor in an attempted murder case. The court
noted that an aider and abettor must "know the full extent of
the direct perpetrator's criminal purpose and must give aid or
encouragement with the intent or purpose of facilitating the
direct perpetrator's commission of the crime . . . the person

guilty of attempted murder as an aider and abettor must intend to kill." *Id*. at 624. Though an aider and abettor may have ascribed to him the *actus reus* of his principal, he must have his own wholly independent intent. To have that intent, Ngo would have had to know of the existence of the back-seat three. No evidence establishes that he did.

The conviction of the attempted murders of the three back-seat passengers violates due process of law and should not stand.