O’SCANNLAIN, Circuit Judge,
dissenting:
In the forty years since it was written, Chambers v. Mississippi 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), “has been used by the Supreme Court only a handful of times to overturn convictions; and the Supreme Court’s standards are quite vague.” Fortini v. Murphy, 257 F.3d 39, 48 (1st Cir.2001). Yet today we hold that Chambers “clearly established] that the exclusion of trustworthy and necessary exculpatory testimony at trial violates a defendant’s due process right to present a defense.” Maj. Op. at 754. Because “the holding of Chambers — if one can be discerned from such a fact-intensive case — is certainly not that a defendant is denied ‘a fair opportunity to defend against the State’s accusations whenever *771 critical evidence’ favorable to him is excluded,” Montana v. Egelhoff, 518 U.S. 37, 53, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996), I respectfully dissent.
I
A
All evidence in this case points to the conclusion that either Armenia Cudjo or his brother Gregory brutally murdered Amelia Prokuda after engaging in (apparently) consensual sexual intercourse. After the murder, evidence against Armenia quickly mounted. Gregory told officers that he had confessed to the crime in some detail, and he was shortly thereafter linked to the semen found on her bound, gagged, beaten, and nearly naked body. People v. Cudjo, 6 Cal.4th 585, 25 Cal.Rptr.2d 390, 863 P.2d 635, 643-64 (1993).
Unable to deny that he had been at the house — and thus would likely have left the single set of footprints found in the rain-washed ground outside her home, id., 25 Cal.Rptr.2d 390, 863 P.2d at 644 — Armenia tried to convince officers that Mrs. Prokuda had traded sexual favors for $50 worth of cocaine. Id., 25 Cal.Rptr.2d 390, 863 P.2d at 645. He then claimed to have gone on a long, slow jog while someone else committed the crime (apparently without leaving any shoe prints). This story had several gaping holes. Among the most blatant were that there was no cocaine found in the Prokuda home and that Mrs. Prokuda’s “blood tested negative for alcohol and an array of illegal drugs, including cocaine.” Id., 25 Cal.Rptr.2d 390, 863 P.2d at 642.
But, Armenia protested, it could not have been him. He had a goatee and several tattoos, but the only eye witness— Prokuda’s five-year-old son Kevin — said that the man who attacked his mother was clean shaven and had no tattoos. Id. Though Kevin could not pick the assailant out of a lineup or identify several other pieces of evidence from the scene, Armenia asserts that he must have been talking about his brother Gregory. Id., 25 Cal. Rptr.2d 390, 863 P.2d at 645.
Armenia sought to make his story sound more plausible by calling John Lee Culver to the stand. According to Culver, Gregory confessed to the crime while the two shared a cell in the local jail. Id., 25 Cal. Rptr.2d 390, 863 P.2d at 647. Culver, however, was far from an ideal witness. He was both a criminal and a decades-long friend of Armenia, and his account of Gregory’s confession did not match the physical evidence of the crime. Id., 25 Cal.Rptr.2d 390, 863 P.2d at 649. More importantly, Culver admitted that he filled in any gaps in Gregory’s confession with his own speculation, see id. (stating initially that Gregory had confessed to implicating Armenia before admitting “that he merely inferred that Gregory had blamed defendant”), or through conference with Armenia’s family and defense team, id., 25 Cal.Rptr.2d 390, 863 P.2d at 647 (no mention of a confession at all until contacted by defense team and none of a little boy until speaking with Gregory shortly before testifying).
The prosecutor argued that this testimony should be excluded as “inherently incredible.” Id., 25 Cal.Rptr.2d 390, 863 P.2d at 648. The trial court agreed, applying a state evidentiary provision allowing it to exclude evidence whose probative value is substantially out-weighed by the danger of undue prejudice or misleading the jury. Id., 25 Cal.Rptr.2d 390, 863 P.2d at 648 (Cal. Evid.Code § 352). (The district court also decided that the evidence was insufficiently reliable to warrant admission under the hearsay exception for statements against penal interest. Id. (Cal. Evid.Code § 1230).)
*772 B
The California Supreme Court concluded that this was an error of state law. It clarified that ordinarily only the reliability of the declarant is relevant to the admissibility of hearsay testimony pursuant to section 1230. Id., 25 Cal.Rptr.2d 390, 863 P.2d at 649. It recognized that in certain “rare instances,” the trial court could exclude hearsay statements based on “doubts about the credibility of the in-court witness.” Id., 25 Cal.Rptr.2d 390, 863 P.2d at 650. In this case, however, the California Supreme Court concluded that because there was insufficient proof that Culver falsely recounted what Gregory said, such questions should have “be[en] left for the jury’s resolution.” Id. Similarly, the court concluded the concerns about Culver’s reliability should not have played a role in the prejudice calculus under section 352. Id.
It determined nonetheless that there was no constitutional error. Having reviewed the Chambers line of cases, the court concluded that “mere erroneous exercise of discretion under ... normal rules” of evidence “does not implicate the federal Constitution.” Id., 25 Cal.Rptr.2d 390, 863 P.2d at 652. Chambers and its progeny, the court decided, were implicated only when “the constitutional right to present and confront material witnesses [is] infringed by general rules of evidence or procedure which preclude material testimony or pertinent cross-examination for arbitrary reasons, such as unwarranted and overbroad assumptions of untrustworthiness.” Id. Because this case did not involve such an overbroad assumption, the court reviewed whether Armenia was prejudiced under the standard rule for erroneous evidentiary decisions. Id. Finding no such prejudice, the California Supreme Court affirmed the conviction.
II
The panel majority concludes that this was an unreasonable interpretation of Chambers. I disagree.
In Chambers, the defendant was accused of shooting a police officer. No one saw Chambers shoot the officer, and there was no evidence that Chambers owned a firearm. 410 U.S. at 289, 93 S.Ct. 1038. By contrast, a third party named Gable McDonald was identified as the shooter, owned a gun, and confessed to the crime three times (once in a sworn affidavit). Id. at 292, 93 S.Ct. 1038. Chambers was prevented from offering much of this evidence. He was allowed to call McDonald, but on cross-examination the government established that McDonald had repudiated at least one of his confessions. Chambers was not allowed on re-direct to give the jury reasons to credit his confession over his repudiation because Mississippi continued to adhere to the “voucher” rule, which binds a party to the assertions of his or her witness. Id. at 298, 93 S.Ct. 1038. He was not even allowed to offer the testimony of the people to whom McDonald confessed because — unlike most other states — Mississippi had not recognized an exception to the bar against hearsay for statements against penal interest. Id. at 293-94, 93 S.Ct. 1038. Deeming both of these rules to be outdated and arbitrary, the Court concluded that under the specific circumstances of that case, Chambers was denied due process of law. Id. at 302-OS, 93 S.Ct. 1038.
This case does not present the same circumstances. In Chambers, there was no question about the reliability of those individuals who were recounting McDonald’s confessions. McDonald also testified himself, offering the prosecution the opportunity to test the veracity of his confession. Id. at 301, 93 S.Ct. 1038. Here, by contrast, the only evidence that Grego *773 ry Cudjo admitted to the crime was the word of a witness of dubious veracity. Cudjo, 25 Cal.Rptr.2d 390, 863 P.2d at 651 (agreeing that the trial court’s “doubts about Culver’s credibility [were] reasonable and legitimate”).
Moreover, the trial court’s error was materially different from that found to be a due process violation in Chambers. There, the only question before the Court was whether the state could “mechanistically apply” two different rules that most jurisdictions had abandoned to the “facts and circumstances of [that] case.” Chambers, 410 U.S. at 302, 93 S.Ct. 1038. The Court did not examine the issue here: whether a single erroneous ruling regarding state evidentiary law could render a conviction a violation of due process. The same is true of the entire line of cases on which Armenia relies. See Green v. Georgia, 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979) (holding that due process required a statement against penal interest exception to hearsay in the penalty phase of a capital case); Rock v. Arkansas, 483 U.S. 44, 58, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) (rule against hypnotically-refreshed testimony may not prevent a defendant from testifying in her own defense); see also Crane v. Kentucky, 476 U.S. 683, 686, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986); Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); Holmes v. South Carolina, 547 U.S. 319, 326, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) (synthesizing this line of cases as holding that “the Constitution ... prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote” but not under “well-established rules of evidence [which] permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice ... or potential to mislead the jury”).
The majority has not cited a single Supreme Court decision extending Chambers beyond situations where the state correctly but mechanistically applied an impermissible rule to those where it made a mistake in applying a perfectly permissible rule.[1] We therefore cannot say that the California Supreme Court’s decision to uphold a verdict involving only the latter error “was contrary to or an unreasonable application of [Supreme Court] precedent.” Penry v. Johnson, 532 U.S. 782, 794, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001). As we have recognized, a “state court’s decision [is] not contrary to clearly established federal law ... [if it] would have required an extension of [a] specialty doctrine.” Benitez v. Garcia, 495 F.3d 640, 644 (9th Cir.2007). Even if we think such an extension is the logical result of existing precedent, we may grant a writ of habeas corpus only “if the refusal to extend [the Court’s previous holdings] was objectively unreasonable.” Id.; see also Hawkins v. Ala., 318 F.3d 1302, 1306 n. 3 (11th Cir.2003).
The California Supreme Court did not act unreasonably when it declined to extend Chambers to cover a simple error in balancing the prejudicial effect against the probative value of a piece of evidence. The rule the majority now endorses “invites federal constitutional scrutiny each and every time, on the basis of particular *774 circumstances, [a district court decides] to exclude a defense witness as unworthy of credit.” Cudjo, 25 Cal.Rptr.2d 390, 863 P.2d at 652. The Chambers line of cases did not suggest — let alone clearly establish — that the due process clause mandates such intrusive review of a state court’s evidentiary rulings. Cf Fortini, 257 F.3d at 47 (“[N]ot every ad hoc mistake in applying state evidence rules, even in a murder case, should be called a violation of due process; otherwise every significant state court error in excluding evidence offered by the defendant would be a basis for undoing the conviction.”).
Ill
Without that extension, all that is left of this case is an error of state law, albeit a significant one. Because we lack authority to issue habeas relief based upon such an error, see, e.g., Swarthoui v. Cooke, — U.S. -, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011); Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990), I respectfully dissent.[2]

. Indeed, we have already recognized that the "Supreme Court has not addressed [the] issue ... [of] whether a trial court's discretionary determination to exclude evidence violated a defendant’s constitutional rights.” Moses v. Payne, 543 F.3d 1090, 1103 (9th Cir.2008). The majority's attempt to fill this gap with Lunbery v. Hombeak, 605 F.3d 754 (9th Cir.2010) is unavailing. Lunbery is hardly persuasive when it resurrected — without citation — an interpretation of Chambers that we had already rejected, Moses, 543 F.3d at 1103, and that the Court had repudiated, Egelhoff, 518 U.S. at 53, 116 S.Ct. 2013.

. The majority’s assertion that the prosecutor’s isolated reference to the defendant’s race in his closing statement similarly violated Armenia’s due process rights is similarly flawed. The California Supreme Court properly noted that this was misconduct, but correctly applied controlling Supreme Court case law. See, e.g., Donnelly v. DeChristoforo, 416 U.S. 637, 646-47, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974) (finding no constitutionally reversible error in improper but isolated comments during closing arguments); see also Parker v. Matthews, 567 U.S. -, 132 S.Ct. 2148, 2153, 183 L.Ed.2d 32 (2012) (reaffirming Donnelly).