SUPERIOR COURT 
 
 COMMONWEALTH vs. JOSE ARMANDA BETANCES

 
 Docket:
 9081CR1859 / 9081CR1860
 
 
 Dates:
 August 3, 2021
 
 
 Present:
 David A. Deakin Associate Justice
 
 
 County:
 MIDDLESEX, ss.
 

 
 Keywords:
 MEMORANDUM AND ORDER ON DEFENDANT’S MOTION TO DISMISS AS TO CHARGE OF MURDER
 
 

             On June 3, 1990, the Middlesex County Grand Jury indicted the defendant, Jose Armanda Betances (“Betances”), for murder (G.L. 265, §1, 9081CR01859) and unlawful possession of a firearm (G.L. c. 269, § 10(a), 9081CR01860) in connection with the May 12, 1990, shooting death of Andrew Alexander in Lowell. The defendant was not arraigned on the charges until February 3, 2020, after he was rendited from the Dominican Republic. On June 28, 2021, Betances moved to dismiss the indictment charging him with murder. Betances’s position is that, should he be convicted of murder, the mandatory sentence of life imprisonment would violate the terms of the Extradition Order issued by the president of the Dominican Republic for his return to the United States. The Extradition Order recites that Betances was returned to the United States on the condition that he not receive a sentence of more than thirty years in prison. Thus, Betances claims that his indictment for murder must be dismissed, and he must be re- indicted for a lesser offense that will not violate the terms of his Extradition Order.
            The Commonwealth filed an Opposition to Defendant’s Motion to Dismiss as to Charge of Murder (“Opposition,” Paper No. 12). The court held a hearing on the Defendant’s Motion to
 
                                                            -1-
 
Dismiss as to Charge of Murder (“Motion,” Paper No. 10) on July 6, 2021. The court concludes that: (1) the thirty-year sentencing limitation in the defendant’s Extradition Order is a unilateral limitation imposed by the Dominican Republic and, therefore, non-binding, and (2) the doctrine of separation of powers precludes the court from reducing the charge to a lesser offense or ordering the Commonwealth to do so. Betances’s Motion is therefore DENIED.
FACTS
            The extradition treaty between the Dominican Republic and the United States (the “Treaty”) was signed on January 12, 2015, by President Barack Obama.[1] Treaty at 1-12.
According to the Treaty, the United States and the Dominican Republic
undert[oo]k[] the obligation to extradite to each other[] . . . persons sought by the Requesting Party from the Requested Party for prosecution or for imposition or service of a sentence for an extraditable offense or offenses.[2]
Treaty, Art. 1 at 3.[3] If an extraditable offense is punishable by death in the country requesting rendition, the nation from which extradition is sought may condition the
 
-------------------------------------
 
[1] The Treaty replaced a prior extradition treaty between the two countries that was signed in 1909. Treaty at 3.
 
[2] An extraditable offense under the treaty is defined as one in which “under the laws of both Parties, the maximum applicable penalty is deprivation of liberty of more than one year or a more severe penalty.” Treaty, Art. 2 at 3.
 
[3] References to the Extradition Treaty Between the United States of America and the Dominican Republic executed on January 12, 2015, are denoted by the word, “Treaty,” followed by an Article number and a page citation. References to the Overview of the Treaty are denoted by the abbreviation “Trty. Ovrvw,” followed by a page citation. References to the Commonwealth’s Affidavit in Support of Request for Extradition are denoted by the abbreviation, “Aff. Req. for Extrdn.,” followed by a page and paragraph citation. References to Defendant’s Motion to Dismiss as to Charge of Murder are denoted by the abbreviation, “Mot.” References to Defendant’s Memorandum of Law in Support of Motion to Dismiss as to Charge of Murder are denoted by the abbreviation, “Def. Mem.,” followed by a page citation. References to the Commonwealth’s Opposition to Defendant’s Motion to Dismiss as to Charge of Murder are denoted by the abbreviation, “Opp.,” followed by a page citation. References to the English translation of Betances’s Extradition Order executed on January 10, 2020 by President Danila Medina of the Dominican Republic are denoted by the abbreviation, “Extrdn. Ord.,” followed by a page citation. References to Affidavit of the Defendant in Support of Motion to Dismiss as to Charge of Murder are denoted by the abbreviation, “Def. Aff.,” followed by a paragraph citation. References to Affidavit of Counsel in Support of Motion to Dismiss as to Charge of Murder are denoted by the abbreviation, “Aff. Def. Cnsl.,” followed by a paragraph citation.
 
                                                            -2-
 
extradition on an assurance from the requesting country that it will not seek the death penalty upon conviction. Treaty, Art. 6.1 at 5. Further, extradition cannot be refused merely because the maximum sentence for the offense in the requesting country is longer than for the analogous offense in the requested nation. Trty. Ovrvw. at 4. This provision “ensure[s] that extradition [is] not limited in cases in which the offense was eligible for life imprisonment as a maximum offense in one Party but not the other.” Id.
            Betances was indicted in this case on June 3, 1990. This court subsequently issued a warrant for his arrest. Authorities in the Dominican Republic apprehended Betances on the warrant in 2019. Exrdtn. Ord. at 1. On April 18, 2018, and November 20, 2019 –prior to Betances’s extradition and in compliance with Article 7 of the Treaty – the Middlesex District Attorney’s Office submitted an Affidavit in Support of Request for Extradition setting out the charges against Betances and the maximum penalties associated with them.[4] Aff. Req. for Exrdtn at 4, ¶ 12. The affidavit states “[t]he maximum penalty for a violation of [murder pursuant to G.L. 265, §1] is life imprisonment.” Id.
            On December 3, 2019, Betances appeared before the Supreme Court of Justice in the Dominican Republic on a petition for his extradition from that nation to the United States. Exrdtn. Ord. at 1. Betances’s Extradition Order was signed by President Danilo Medina of the
 
-------------------------------------
 
[4] The April 18, 2018, Affidavit in Support of Request for Extradition signed by ADA Clarence H. Brown and the November 20, 2019, Affidavit in Support of Request for Extradition signed by ADA Thomas F. O’Reilly (both located in Exhibit 2 of the Opp.) are identical except for ¶¶ 1-3. For purposes of this decision, references to “Aff. Req. for Extrdn” refer to both affidavits.
 
                                                            -3-
 
Dominican Republic on January 10, 2020. Exrdtn. Ord. at 3. Betances consented to an expedited extradition process. Id. According to Article 1 of the Extradition Order,
[s]uch surrender to extradition [of Betances] is carried out under the condition that . . . under no circumstances . . . would he be given a sentence greater than the maximum established in the Dominican Republic, which is thirty (30) years, nor the death penalty . . . .
Id. Pursuant to the Extradition Order, Betances was extradited to the Commonwealth to be tried for the murder. Id. at 2-3. He was arraigned in the Middlesex Superior Court on February 3, 2020.
ANALYSIS
            Under the treaty-making power of the United States, the Federal government may enter into extradition treaties with foreign countries to provide for mutual assistance in surrendering criminals who have committed crimes in one country and are found in another. See Commonwealth v. Diaz, 431 Mass. 822, 827 (2000). Because treaties entered into by the United States are deemed to be the “law of the land,” United States v. Rauscher, 119 U.S. 407, 419 (1886), “extradition treaties are given the force of Federal Statutes.” Diaz, 431 Mass. at 826, citing Rauscher, 119 U.S. at 418-419.[5]
            Enforcement of extradition treaties is governed by the rule of specialty. See Aguasvivas v. Pompeo, 984 F.3d 1047, 1062 (1st Cir. 2021). “The doctrine of specialty is grounded in international comity and generally requires that a requesting country not prosecute a defendant for offenses other than those for which extradition was granted.” Id., quoting United States v. Tse, 135 F.3d 200, 204 (1st Cir. 1998). See generally Rauscher, 119 U.S. at 424 ( “[an extradited defendant] shall be tried only for the offense with which he is charged in the extradition
 
-------------------------------------
 
[5] Because extradition proceedings are governed by Federal law, Federal precedents are applicable here.
 
                                                            -4-
 
proceedings, and for which he was delivered up . . . ”). An extradited defendant can be tried only for extraditable crimes – i.e., crimes specified in the relevant extradition treaty, and the extradition request must set out the crimes the defendant is alleged to have committed and their potential penalties. See United States v. Campbell, 300 F.3d 202, 209-210 (2nd Cir. 2002).
            According to the rule of specialty, “a country seeking extradition [must] adhere to any limitations placed on prosecution by the surrendering country.” United States v. Baez, 349 F.3d 90, 92 (2d Cir. 2003), citing United States v. Andonian, 29 F.3d 1432, 1435 (9th Cir. 1994). A surrendering country may condition an extradition on assurance by the requesting country that, in the event of conviction, the sentence imposed will be based on an agreement between the countries’ governments. See United States v. Cuevas, 496 F.3d 256, 262 (2nd Cir. 2007) (“The rule of specialty has application in the sentencing context as well.”); Baez, 349 F.3d at 93 (a court “delicately must balance its discretionary sentencing decision with the principles of international comity in which the rule of specialty sounds.”). Accordingly, a “court ‘should temper [its] discretion in sentencing an extradited defendant with deference to the substantive assurances made by the United States to an extraditing nation.’” Cuevas, 296 F.3d at 262 (emphasis in original), quoting Baez, 349 F.3d at 93. “[S]uch deference may well allow the United States to secure the future extradition of other individuals because foreign nations would observe that the limitations they negotiated with the Executive branch in respect to the prosecution of their extradited citizens are being honored.” Baez, 349 F.3d at 93 (emphasis supplied). Therefore, “[a]greed-upon sentencing limitations should be enforced.” Rodriguez Benitez v. Garcia, 495 F.3d 640, 644 (9th Cir. 2007).
            Sentencing limitations that are unilaterally imposed and are not a result of an agreement, however, are not binding. See id. (upholding defendant’s sentence against challenge based on
 
                                                            -5-
 
rule of specialty because sentencing limitations imposed by Venezuela were unilateral and not negotiated); Cuevas, 496 F.3d at 262 (upholding defendant’s sentence against specialty-rule challenge because record failed to reveal any assurance by United States to Dominican Republic that, upon conviction, defendant’s sentence would be limited to thirty years). In United States v. Banks, 464 F.3d 184, 191 (2d Cir. 2006), the defendant argued “that the Dominican Republic conditioned his extradition on the promise of the United States to limit any sentence [he] might receive to 30 years imprisonment[]” Thus, he claimed, his sentence of life imprisonment violated his extradition agreement and was unwarranted. See id. The Second Circuit rejected this argument, holding that the defendant “failed to produce any evidence that the United States ever entered into an agreement or undertaking to limit the duration of his sentence.” Id. at 192. See also Rodriguez Benitez, 495 F.3d at 644 (dicta) (had Venezuela demanded assurances from the United States that it would comply with the proposed sentencing limitations prior to extraditing the defendant, such sentencing limitations would have been binding). The holding in Banks dictates the same outcome in this case.
I)  The Dominican Republic’s unilaterally imposed thirty-year sentencing limitation in this case is not binding.
            It is uncontested that Betances is being tried for an offense for which he has been extradited; that murder is an extraditable offense under the Treaty; and that the extradition request sent to the Dominican Republic specified the crimes he is alleged to have committed and their potential penalties. Treaty, Art. 2 at 3; Aff. Req. for Exrdtn. at 3-4. Disagreement is limited to whether the rule of specialty requires Betances to be sentenced to a maximum of thirty years
 
                                                            -6-
 
upon a finding of guilt instead of the statutorily prescribed sentence for a murder conviction under G.L. c. 265, §§1-2 – life imprisonment.[6]
            Betances relies on the Extradition Order signed by President Danilo Medina of the Dominican Republic, which states that his extradition was “carried out under the condition that  . . . under no circumstances would [Betances] . . . be given a sentence greater than the maximum established in the Dominican Republic, which is thirty (30) years, nor the death penalty.. . . ” Exrtdn. Ord. at 3. According to Betances, he consented to his extradition only because the attorney who represented him in the extradition proceedings in the Dominican Republic assured him that his extradition was conditioned on this agreed-upon sentencing limitation.[7] Def. Aff. at ¶ 5. He contends that the rule of specialty requires dismissal of the indictment charging him with murder because the sentence that it carries, mandatory life in prison, exceeds thirty years and thus violates the sentencing limitations imposed by the Extradition Order. Def Memo. at 7.
            Betances, however, has not produced any credible “evidence that the United States ever entered into an agreement or undertaking to limit the duration of his sentence.” Banks, 464 F.3d at 192. Betances has presented no evidence suggesting a “substantive assurance made by the United States” that it agreed to the condition, which, in turn, suggests that no such agreement
 
-------------------------------------
 
[6] A conviction for first degree murder in Massachusetts carries “imprisonment in the state prison for life” without parole. G.L. c. 265, § 2(a). A conviction for second degree murder carries “imprisonment in the state prison for life and . . . [eligibility] for parole after a term of years fixed by the court pursuant to section 24 of chapter 279.” G.L. 265, § 2(c). Betances correctly notes that under G.L. c. 279, § 24, he would only be eligible for parole after serving fifteen to twenty-five years in state prison, “but not necessarily released from state prison on parole.” Def. Memo. at 8. Thus, a conviction of murder under G.L. c. 265, § 1, in either the first or second degree would result in a life sentence and, in the case of a conviction for second-degree murder, a potential sentence greater than thirty years.
 
[7] The maximum sentence in the Dominican Republic for murder is thirty years. Extrdn. Ord. at 3.
 
                                                            -7-
 
exists. Cuevas, 296 F.3d at 262 (emphasis omitted), quoting Baez, 349 F.3d at 93. As there is no evidence in the record that the United States negotiated about, or agreed to, the sentence limitation included in the Extradition Order, the court concludes that it is not a negotiated – and therefore binding – sentencing limitation but, instead, a unilateral – and therefore non-binding – declaration. Without documentation – such as an affidavit from Betances’s attorney in the Dominican Republic, documentation from the United States government or the Middlesex District Attorney’s Office suggesting negotiations with the government of the Dominican Republic, or a diplomatic note demonstrating a negotiation between the United States and that country – the court discerns no basis to conclude that the United States agreed to the sentencing limitation.[8] Indeed, the absence of any evidence that the United States government communicated with the prosecuting authority (the Middlesex County District Attorney’s Office) strongly suggests that the United States did not negotiate with the Dominican Republic about the sentencing limitation. This is because, although it is conceivable that the United States government might enter into a negotiation with the Dominican Republic about extradition, it is certainly most unlikely that it would do so without consulting the prosecuting authority about such negotiations.
            Although “[a]greed-upon sentencing limitations are generally enforceable[,]” unilateral limitations are not. Rodriguez Benitez, 495 F.3d at 644. Absent any evidence that the sentencing
 
-------------------------------------
 
[8] During argument, counsel for Betances analogized his situation, unpersuasively, to the contract- law concept of offer and acceptance. In the defendant’s view, the United States accepted the thirty-year-sentencing-limitation imposed by the Dominican Republic when it took custody of Betances. This argument implicitly asks the court to decline to follow the cases (cited in the text, supra) that have held that unilaterally imposed conditions on extraditions are not binding. The rationales of those cases make clear that, in light of the context in which extradition treaties are implemented, the analogy to contract law is inapposite.
 
                                                            -8-
 
limitation expressed in the Extradition Order was the product of negotiation, the court concludes that it is far more likely than not that the sentencing limitation at issue was a unilateral declaration by the extraditing nation and not, as Betances claims, the product of negotiation. It is therefore not binding on this court.[9]
II) Although the rule of specialty at least arguably guides the court to exercise its discretion in sentencing in favor of comity, the doctrine of separation of powers precludes the court from imposing a sentence less than the mandatory minimum sentence for murder.
            That unilaterally imposed sentencing limitations are not binding on courts does not necessarily end the analysis. That is because, even in cases of unilateral, non-binding limitations, it is at least arguable that the rule of specialty guides the court to exercise its discretion in favor of comity. See Cuevas, 296 F.3d at 262 (emphasis in original), quoting Baez, 349 F.3d at 93. Thus, to the extent that a court can exercise discretion, the rule of specialty might be read as guiding the court to exercise its discretion in favor of a sentence within the range prescribed by the Extradition Order. The obvious difficulty with applying this rule in this case (if, indeed, it is applicable at all), however, is that the court lacks discretion to sentence Betances to a sentence of
 
-------------------------------------
 
[9] The Commonwealth further argues that the sentencing limitation is unenforceable not only under the rule of specialty, but also under Article 6.2 of the Treaty, which provides that “extradition shall not be refused on the basis that the term of imprisonment for the offense is a term that is greater in the Requesting Party than in the Requested Party.” Treaty, Art. 6.2 at 5. Thus, the Commonwealth maintains, the Dominican Republic does not have the power to deny Betances’s extradition because the sentence for a murder conviction in Massachusetts (life imprisonment) could result in a period of imprisonment longer than that applied in the Dominican Republic (a maximum of thirty years). See id. This argument is not persuasive because this is not a situation in which the Dominican Republic refused extradition. Thus, that such a refusal might have violated the Treaty does not imply that an extradition conditioned on a unilateral sentencing restriction is also a violation of the treaty. As the court concludes, however, that the unilateral restriction is non-binding – and as the court has no discretion to impose a sentence less than the mandatory minimum for murder (see Section II, infra) – whether the Dominican Republic’s unilateral sentencing restriction violates the Treaty is of no significance to the outcome of this case.
 
                                                            -9-
 
no more than thirty years, should he be convicted of murder, in either the first or second degree.[10] That is because the mandatory sentences for first-degree murder (life imprisonment without possibility of parole) and second-degree murder (life imprisonment with parole eligibility at between fifteen and twenty-five years) each either exceeds or, at minimum, potentially exceeds the thirty-year limitation unilaterally imposed by the government of the Dominican Republic.
A. This court may not impose a sentence shorter than the mandatory minimum sentence prescribed by the legislature for the offense.
            “Although it is the court’s function to impose sentences upon conviction, it is for the Legislature to establish criminal sanctions and, as one of its options, it may prescribe a mandatory minimum” Commonwealth v. Jackson, 369 Mass. 904, 922 (1976) (citations omitted). To allow the judiciary to ignore the Legislature’s prescribed mandatory minimum for a specific offense would be a violation of the separation of powers doctrine and, in effect, “would mean that the judiciary possesses the power to nullify the Legislature’s authority.” Id. Although mandatory minimum sentences impinge on the judge’s discretion in sentencing, they do not violate the doctrine of separation of powers because “[the court] grant[s] substantial deference to the broad authority of the Legislature to set the duration of imprisonment when prescribing penalties for criminal offenders.” Commonwealth v. Therriault, 401 Mass. 237, 239 (1987). Further, although the Executive branch’s decision to charge a crime that requires a minimum sentence may encroach on the judiciary’s discretion in sentencing, it is not a violation of the separation of powers doctrine because it is merely the Executive exercising its duty to
 
-------------------------------------
 
[10] If Betances were convicted of manslaughter, of course, the issue would become moot because the maximum sentence for manslaughter is twenty years in prison. See G. L. c. 265, § 13.
 
                                                            -10-
 
execute the laws enacted by the Legislature. See United States v. Vargas, 204 F.App’x 92, 94 (2d Cir. 2006), citing Mistretta v. United States, 488 U.S. 361, 364 (1989).[11]
            Thus, if Betances were convicted of murder under G.L. c. 265, § 1, a court would be compelled to impose the mandatory minimum sentence of life imprisonment. See Jackson, 369 Mass. at 922. For the court to ignore the statutorily prescribed sentence for a murder conviction would be a violation of the doctrine of separation of powers, as it is within the Legislature’s power to create such penalties and the Executive’s power to enforce them. See id.; Therriault, 401 Mass. at 239; Vargas, 204 F.App’x at 94 (citations omitted). Although, under the rule of specialty, courts at least arguably should exercise discretion in favor of international comity, such discretion cannot be exercised here. See id.
B. The doctrine of separation of powers precludes this court from reducing Betances’s murder charge to a lesser offense.
            Similarly, a judge does not have the authority to reduce a criminal charge brought against a defendant; that power lays exclusively with the Executive branch. See Commonwealth v. Brandano, 359 Mass. 332, 335 (1971), quoting Commonwealth v. Hart, 149 Mass. 7, 8-9 (1889) (“‘[a] court is not a prosecuting officer, and does not act as the attorney for the commonwealth’”); Commonwealth v. Cheney, 440 Mass. 568, 574 (2003) (to allow the “[j]udicial review of decisions which are within the executive discretion of the [prosecutor]” would violate the separation of powers doctrine) (citations omitted). “To conclude otherwise would be to permit judges to substitute their judgment as to whom and what crimes to prosecute,
 
-------------------------------------
 
[11]Because the separation of powers framework established by the Constitution of Massachusetts is identical to that established by the United States Constitution, these federal cases are persuasive. See Massachusetts Constitution Pt. 1, art. XXX.
 
                                                            -11-
 
for the judgment of those who are constitutionally charged with that duty, and who are accountable to the people for doing so responsibly.” Cheney, 440 Mass. at 575.
            It is Betances’s position that, because a conviction of murder in Massachusetts carries a sentence longer than thirty years in prison, this court should dismiss the indictment charging him with murder and reduce it to a lesser charge that carries a sentence shorter than thirty years, such as manslaughter.[12] Principles of separation of powers, however, preclude the court from reducing the charges against Betances because it is the exclusive province of the Executive branch to decide who is to be charged and for what crimes. See Brandano, 359 Mass. at 335; Cheney, 440 Mass. at 574. The court therefore lacks authority to reduce the charge against Betances, regardless of the provisions of an extradition agreement.
ORDER
            Because the court concludes (1) that the thirty-year sentencing limitation was a unilateral limitation and, therefore, non-binding, and (2) that the court lacks the authority to exercise discretion in the direction of honoring the non-binding limitation, Betances’s Motion is DENIED.
 
@/s/David A. Deakin Associate Justice
 
@August 3, 2021
 
-------------------------------------
 
[12] This argument was not included in Betances’s Memorandum of Law in Support of Motion to Dismiss as to Charge of Murder (Paper No. 10.3) but was raised at argument on the defendant’s Motion to Dismiss.
 
                                                            -12-
 
xxz