14-4769(L)
United States v. Miguel Delance, Limet Vasquez, Carlos Urena

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 31st day of May, two thousand seventeen.

Present:      JON O. NEWMAN,
              ROSEMARY S. POOLER,
              PETER W. HALL,
                      *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

                      *Appellee*,

        v.                                            14-4769(L)
                                                      15-77(CON)
MIGUEL DELANCE, LIMET VASQUEZ, CARLOS URENA,          15-118(CON)
aka SEALED DEFENDANT 4, aka SALCEDO, aka WHITE
BOY,

                      *Defendants-Appellants*.[1]

_____

Appearing for Appellant        Deborah Colson, Colson & Harris LLP, New York, NY.
Miguel Delance:

Appearing for Appellant        Don Buchwald, New York, NY.
Limet Vasquez:
                               Alina Mejer, Kelley Drye & Warren LLP, New York, NY.

_____
[1] The Clerk of the Court is respectfully directed to amend the caption as above.

Appearing for Appellant    Gregory E. Cooper, New York, NY.
Miguel Carlos Urena:

Appearing for Appellee:    Catherine Geddes, Micah W.J. Smith, Assistant United States
Attorneys (Margaret Garnett, Assistant United States Attorney, *on the brief*), *for* Joon H. Kim, Acting United States Attorney for the Southern District of New York, New York, NY.

Appeal from the United States District Court for the Southern District of New York (Engelmayer, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of said District Court be and they hereby are **AFFIRMED**.

Defendants-Appellants Carlos Urena and Limet Vasquez appeal from the January 9, 2015 judgments of the United States District Court for the Southern District of New York (Engelmayer, *J.*), convicting them, following a seven-week jury trial, of: participating in a racketeering enterprise, in violation of 18 U.S.C. §§ 1961 and 1962(c); conspiracy to commit racketeering, in violation of 18 U.S.C § 1962(d); and narcotics conspiracy, in violation of 21 U.S.C. § 846. Additionally, Urena was convicted of murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and 2; use of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(j); three counts of assault and attempted murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(3), 1959(a)(5), and 2; and conspiracy to murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5).

Defendant-Appellant Miguel Delance appeals from the December 19, 2014 judgment of the United States District Court for the Southern District of New York (Engelmayer, *J.*), convicting him, following a guilty plea, of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). The district court sentenced Delance primarily to 121 months' imprisonment.

We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

## I. Prosecutorial Misconduct

### A. *Brady/Giglio Violation*

Urena alleges that the government violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), by failing to disclose (1) the pre-trial arrest of Angel Hernandez and (2) Hernandez's post-arrest statements to the government. Urena argues that he could have used this information to interview Hernandez, to call Hernandez as a trial witness, and to impeach certain cooperating witnesses and a civilian witness.

2

A *Brady/Giglio* violation has three elements: "[(1)] [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [(2)] that evidence must have been suppressed by the State, either willfully or inadvertently; and [(3)] prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Evidence is impeaching if it "ha[s] the potential to alter the jury's assessment of the credibility of a significant prosecution witness." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998).

Under the third prong of the *Strickler* test, we evaluate whether the impeachment evidence is material. "Evidence is material . . . when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different, such that the failure to disclose undermines confidence in the verdict." *United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 91 (2d Cir. 2014) (internal alterations and quotation marks omitted). With respect to impeachment evidence, "[i]n general, evidence whose function is impeachment may be considered to be material where the witness in question supplied the only evidence linking the defendant to the crime" or "supplied the only evidence of an essential element of the offense." *Avellino*, 136 F.3d at 256-57. Moreover, "[i]t is well settled that where ample ammunition exists to attack a witness's credibility, evidence that would provide an additional basis for doing so is ordinarily deemed cumulative and hence immaterial." *United States v. Orena*, 145 F.3d 551, 559 (2d Cir. 1998).

Here, the nondisclosure of Hernandez's arrest and post-arrest statements did not violate the government's obligation under *Brady/Giglio* because they were not material. At most, Hernandez's statements may have been used to impeach cooperating witnesses Jose Cruz and civilian witness Nicole Mela. Any impeachment material from Hernandez was unlikely to be material because neither Cruz nor Mela supplied the only evidence linking Urena to the murder of Ka'Shawn Phillips. *See Avellino*, 136 F.3d at 256-57. A number of other witnesses identified Urena as the second shooter and denied that Hernandez's half-brother, Juan Martinez ("KJ"), was the first shooter. Additionally, because Urena had access to substantial evidence to impeach Cruz, any additional evidence obtained from Hernandez would have been deemed cumulative and immaterial. *See Orena*, 145 F.3d at 559. Even though the disclosure of Hernandez's arrest and post-trial statements may have been useful to Urena, the government's nondisclosure was not "so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler*, 527 U.S. at 281.

### B. Improper Prosecutorial Summation

Urena argues that the government's summation included improper references to propensity evidence, and that those references prejudiced Urena because the jury may have relied on the propensity evidence to convict Urena for the Phillips murder.

"A defendant bears a substantial burden in arguing for reversal on the basis of prosecutorial misconduct in the summation." *United States v. Caracappa*, 614 F.3d 30, 41 (2d Cir. 2010). That is because, in order to prevail, the defendant "must demonstrate misconduct so egregious that, when viewed in the context of the entire trial, it substantially prejudiced him." *United States v. Newton*, 369 F.3d 659, 680 (2d Cir. 2004). "In assessing whether a defendant has sustained substantial prejudice, we consider the severity of the alleged misconduct, any

curative measures taken by the trial court, and the likelihood of conviction absent the challenged conduct." *Id.*

In this case, Urena appears to complain about the government's discussion of uncharged violent incidents in its summation, arguing that their use amounted to the improper use of propensity evidence. The district court "carefully monitored" the government's summation and did not hear "anything . . . that came close to arguing propensity." Tr. at 5016. Moreover, the government was permitted to introduce evidence of uncharged offenses to show the existence of the criminal enterprise, and the admission of such evidence is not subject to Federal Rule of Evidence 404(b). *See United States v. Baez*, 349 F.3d 90, 93-94 (2d Cir. 2003) ("It is well settled that in prosecutions for racketeering offenses, the government may introduce evidence of uncharged offenses to establish the existence of the criminal enterprise."). Accordingly, Urena did not demonstrate that the government engaged in any misconduct—much less misconduct so severe that, when viewed in the context of the entire trial, substantially prejudiced him.

## II. Evidentiary Rulings

"We review the district court's evidentiary rulings for abuse of discretion." *United States v. Natal*, 849 F.3d 530, 534 (2d Cir. 2017). Even if a district court abuses its discretion by making an erroneous evidentiary ruling, that error is ordinarily subject to harmless error review. *United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009).

### A. Exclusion of Transcript of Unavailable Witness's Prior Testimony

Urena argues that the district court abused its discretion by denying his request to admit, pursuant to Federal Rule of Evidence 807, the transcript of an unavailable witness's prior testimony in a state court trial.

A statement will be admitted under Rule 807, the residual exception, if "(i) it is particularly trustworthy; (ii) it bears on a material fact; (iii) it is the most probative evidence addressing that fact; (iv) its admission is consistent with the rules of evidence and advances the interests of justice; and (v) its proffer follows adequate notice to the adverse party." *United States v. Morgan*, 385 F.3d 196, 208 (2d Cir. 2004). "Congress intended that the residual hearsay exception[] will be used very rarely, and only in exceptional circumstances." *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991) (internal quotation marks omitted).

Urena sought to introduce prior testimony from Jamal Thomas. Thomas was a witness in the state court trial of KJ for the murder of Phillips, and testified that KJ was the first shooter. Thomas was unavailable to testify in the instant trial. The district court conducted a careful, on-the-record analysis of the admissibility of Thomas's prior testimony under Rule 807. While the district court found that Thomas's prior testimony satisfied the second prong because it pertained to a material fact, the testimony otherwise failed to meet the remaining prongs for admissibility under Rule 807. In particular, the district court cited several later-arising facts that undermined the trustworthiness of Thomas's prior testimony, identified testimony already presented by available witnesses that was as probative as Thomas's on the identity of the first shooter, and found that it would not serve the interests of justice to permit the defense to rely on the prior

4

testimony of an unavailable witness when it could present comparable testimony from available witnesses. We agree with the district court's well-reasoned explanation for denying Urena's request to admit Thomas's prior testimony.

### B. *Exclusion of Evidence from Proffer Interview of Richard Gonzalez*

Vasquez sought to introduce evidence from a proffer interview of Richard Gonzalez to impeach the testimony of cooperating witness Jose Cruz. The district court denied such evidence under both Federal Rules of Evidence 613(b) and 403. "We will overturn a trial judge's determination under Rule 403 only if we determine that the judge acted arbitrarily or irrationally." *United States v. Tracy*, 12 F.3d 1186, 1195 (2d Cir. 1993).

We do not address the district court's determination with respect to Rule 613(b) because the district court's decision to exclude the evidence from Gonzalez's proffer interview under Rule 403 was not an abuse of discretion. *See United States v. King*, 560 F.2d 122, 128 (2d Cir. 1977). Given Gonzalez's limited recollection of his underlying conversation with Cruz about the Phillips murder and his inability to provide context, the district court was within its discretion in determining that the statements in Gonzalez's proffer had low probative value which was outweighed by the risk of misleading the jury and permitting the jury to speculate about the meaning of those statements. "[M]indful of a district court's superior position to assess relevancy and to weigh the probative value of evidence against its potential for unfair prejudice," we hold that there was no abuse of discretion. *United States v. Schaffer*, 851 F.3d 166, 177 (2d Cir. 2017) (alterations omitted).

## III. Motions for Mistrial

Urena argues that the district court erred in denying his motions for mistrial. Urena sought a mistrial as the result of allegedly prejudicial publicity relating to a *New York Daily News* article, and the admission of fear-based testimony by a witness.

### A. *Prejudicial Publicity*

"When jurors have been exposed to prejudicial publicity during trial, the trial court must determine whether the jurors retained the requisite impartiality." *United States v. Scopo*, 861 F.2d 339, 349 (2d Cir. 1988) (internal quotation marks omitted). We have established a "simple three-step process" that a district court may follow in order to determine whether a mistrial is warranted as a result of prejudicial publicity:

> [F]irst . . . determine whether the coverage has a potential for unfair prejudice[;] second, . . . canvass the jury to find out if they have learned of the potentially prejudicial publicity[;] and[] third, . . . examine individually exposed jurors—outside the presence of the other jurors—to ascertain how much they know of the distracting publicity and what effect, if any, it has had on that juror's ability to decide the case fairly.

*Id.* We review the district court's determinations under this process for an abuse of discretion. *Id.*

5

In this case, the parties informed the district court that the *New York Daily News* had published an article about Urena's prosecution. The district court, at defense counsel's request, twice questioned the jurors about whether they had "read or seen anything about the case." Tr. 1522, 1727-28. When no juror raised his or her hand, the district court specifically instructed the jurors not to read that day's *Daily News* or anything about Urena's case. Under these circumstances, after completing the first two steps of the three-step process, the district court "could certainly ascertain that these jurors, who had been given a cautionary instruction and reported that they did not know the content of the offending article, could remain impartial." *See United States v. McDonough*, 56 F.3d 381, 387 (2d Cir. 1995) (internal quotation marks and citation omitted). It did not need to take further action to determine whether the jury could remain impartial. *See id.* The district court properly denied Urena's related motion for mistrial.

### B. Striking Testimony from Samuel Fernandez

Urena challenges the district court's decision not to strike, in full, the testimony of witness Samuel Fernandez. Fernandez testified, among other things, that he was afraid that Urena and the Trinitarios would harm him and his family for testifying.

During the trial, Urena's counsel moved to strike Fernandez's testimony and for a mistrial. We review a district court's denial of a motion for mistrial for abuse of discretion. *United States v. Carson*, 52 F.3d 1173, 1188 (2d Cir. 1995).

The district court initially denied those motions, but later proposed a limiting instruction to mitigate "potential areas of prejudice" resulting from such testimony, including the risk that the jury would "consider [the witness's testimony about fear] as substantive evidence bearing on the guilt or innocence of [Urena]." Tr. at 2773-74. The district court specifically instructed the jury it struck parts of Fernandez's testimony and that that the jury could not consider Fernandez's testimony about fear "for any purpose," and that it "must disregard it altogether." Tr. at 3063.

The district court did not abuse its discretion by denying Urena's motion for mistrial and motion to strike Fernandez's testimony in its entirety. Certain aspects of Fernandez's testimony were relevant and admissible—*e.g.* his testimony about the existence of the Trinitarios enterprise, the Trinitarios' meeting in Van Cortlandt Park. Moreover, the district court addressed concerns about the prejudicial nature of Fernandez's testimony by striking substantial portions, including his fear testimony. Because we recognize a "strong presumption" that juries follow [a district court's] limiting instructions," *United States v. Snype*, 441 F.3d 119, 129 (2d Cir. 2006), the district court's use of a limiting instruction should have mitigated the concern about any unduly prejudicial effect of Fernandez's testimony, *see United States v. Elfgeeh*, 515 F.3d 100, 127 (2d Cir. 2008); *United States v. Anzalone*, 626 F.2d 239, 245-46 (2d Cir. 1980) (affirming the denial of defendant's mistrial motion). Given the district court's limiting instruction, its decision to deny Urena's motions for a mistrial and to strike the entirety of Fernandez's testimony was not an abuse of discretion.

## IV. Sufficiency of the Evidence

On appeal, Vasquez argues that there was insufficient evidence to show that he participated in the narcotics conspiracy during the statute of limitations period: December 5, 2007 to December 5, 2012.

"We review challenges to the sufficiency of evidence *de novo*." *United States v. Pierce*, 785 F.3d 832, 837 (2d Cir. 2015). A defendant challenging the sufficiency of the evidence supporting his conviction "bears a heavy burden, as the standard of review is exceedingly deferential" to the jury's verdict. *United States v. Brock*, 789 F.3d 60, 63 (2d Cir. 2015). We "will sustain the jury's verdict if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Pierce*, 785 F.3d at 838 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

In this case, a rational jury could conclude that Vasquez agreed with another to distribute narcotics, that he had a specific intent to distribute narcotics, and that he took an overt act in furtherance of the conspiracy. *See United States v. Rodriguez*, 392 F.3d 539, 545 (2d Cir. 2004). The government offered evidence that was sufficient for a rational jury to conclude that Vasquez was involved in the charged narcotics conspiracy during the limitations period. The government introduced: (1) testimony from NYPD officer Edwin Salas that, in 2009, he witnessed Vasquez acting as "a lookout or steerer for . . . drug sale[s];" Tr. 3585. (2) that Officer Salas legally searched an apartment belonging to Vasquez and Anthony Rodriguez (another man suspected of selling narcotics) and recovered powder cocaine; (3) that Officer Salas heard Vasquez warn Rodriguez over the latter's walkie-talkie phone that the police were coming; and (4) circumstantial evidence that Vasquez's drug activity in 2009 occurred on blocks controlled by the Trinitarios until at least 2011—meaning that one either needed to be a Trinitario or receive permission from them to sell drugs there.

Given this evidence, a rational jury could have found the essential elements of the crime proven beyond a reasonable doubt. We will not disturb Vasquez's conviction.

## V. Reasonableness of Sentence

This Court reviews challenges to a sentence under a "reasonableness" standard, which is "a particularly deferential form of abuse-of-discretion review." *United States v. Broxmeyer*, 699 F.3d 265, 278 (2d Cir. 2012) (internal quotation marks omitted). "Reasonableness review requires an examination of the length of the sentence (substantive reasonableness) as well as the procedure employed in arriving at the sentence (procedural reasonableness)." *United States v. Robinson*, 702 F.3d 22, 38 (2d Cir. 2012).

A sentence is procedurally unreasonable if the district court "fails to calculate the Guidelines range . . . , makes a mistake in its Guidelines calculation, . . . treats the Guidelines as mandatory . . .[,] does not consider the [Section] 3553(a) factors, . . . rests its sentence on a clearly erroneous finding of fact . . . [,] fails adequately to explain its chosen sentence, [or fails to] include an explanation for any deviation from the Guidelines range." *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (internal quotation marks omitted).

7

A sentence is substantively unreasonable and will be set aside "only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions." *United States v. Rigas*, 583 F.3d 108, 122 (2d Cir. 2009) (internal quotation marks omitted). Substantive reasonableness review "provide[s] a backstop for those few cases that, although procedurally correct, would nonetheless damage the administration of justice because the sentence imposed was shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *Id.* at 123.

Delance argues that his 121-month sentence, located at the bottom of his Guidelines range, was procedurally unreasonable because the district court did not properly apply Sentencing Guideline Section 5G1.3(b) and was substantively unreasonable because the severity of the sentence was not supported by Delance's minor role in the crimes committed. We disagree and affirm Delance's sentence.

Addressing Delance's claim of procedural unreasonableness first, his sentence was not procedurally unreasonable because the district court applied Section 5G1.3(b) and carefully explained its weighing of the 3553(a) factors. Under Section 5G1.3(b):

> If . . . a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction . . . the sentence for the instant offense shall be imposed as follows:
>
> > (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
> >
> > (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

U.S.S.G. § 5G1.3(b).

The district court adequately explained the effect of Section 5G1.3(b) on Delance's sentence. After specifying that the district court would have given Delance a sentence "well, well above" the Guidelines range of 121-151 months if it were to include a consideration of Delance's prior offenses, the district court determined that it would impose a 121-month sentence. Delance App'x at 338. The district court stated that

> in fashioning today's sentence[,] I am pointedly adjusting the sentence downward to reflect the sentence I believe is appropriate solely to reflect the criminal conduct that you have not previously been sentenced for. The sentence I impose, therefore, will take into account and reflect an adjustment downwards for the time [Delance had] already served on this relevant conduct.

8

*Id.*

Finally, the district court decided that, pursuant to Section 5G1.3(b)(2), the 121-month sentence would run concurrently to the 13 months remaining on Delance's undischarged state court sentence. Because it is apparent that the district court adjusted its sentence to account for the period of imprisonment that Delance had already served on his related state conviction, and the district court made Delance's sentence concurrent to his undischarged term of imprisonment, the district court did not err in its application of Section 5G1.3(b). Moreover, the district court carefully weighed the Section 3553(a) factors and concluded that, "on the basis solely of the acts for which [Delance] had not previously been held to account," there was ample justification for a "very long sentence" in excess of the Guidelines range of 121-151 months. Delance App'x at 334.

Delance's sentence was not substantively unreasonable because it was not "shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *Rigas*, 583 F.3d at 123. The district court had discretion to impose a significant sentence given Delance's involvement in a murder and other racketeering acts for which Delance had not yet been punished. The district court's imposition of a 121-month sentence for Delance's unpunished crimes, given their seriousness and violence, was not outside the range of permissible decisions.

## VI. Conclusion

We have considered the remainder of Urena's, Vasquez's, and Delance's arguments and find them to be without merit. Accordingly, the judgments of the district court hereby are AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

9