349 F.3d 90
 UNITED STATES of America, Appellee,
v.
Nelson BAEZ, a/k/a Giovanni, a/k/a Nano, a/k/a Patricio Baez, a/k/a Patricio Bermo, Edison Santiago Cordova, Nicholas Coronel, a/k/a Javier, a/k/a Estaban Maldonado, Jorge Garcia, a/k/a Piasa, Carlos Gonzalez, a/k/a Ernesto, a/k/a Ernestico, a/k/a Nestico, a/k/a Pedro Cabrera, Pepe Mirand, a/k/a Conejo, a/k/a Mauricio, Paola Restrepo, a/k/a Petronila Maria Santander, Julian Tamayo, Mabel Fernandez, Jose Ramos, Defendants, Alex Restrepo, a/k/a Carlos Rodriguez, a/k/a Jose, a/k/a O.R., a/k/a Oscar Restrepo, Defendant-Appellant.
 No. 02-1660.
 United States Court of Appeals, Second Circuit.
 Submitted: October 22, 2003.
 Decided: November 14, 2003.
 Amended: November 18, 2003.
 
 HELEN CANTWELL, Assistant United States Attorney, for James B. Comey, United States Attorney for the Southern District of New York, New York, N.Y. (Ronnie Abrams and Laura Grossfield Birger, Assistant United States Attorneys, of counsel), for Appellee.
 Gregory G. Smith, Law Office of Gregory G. Smith, New York, NY, for Defendant-Appellant.
 Before: MESKILL and B.D. PARKER, Jr., Circuit Judges, and CHIN, District Judge.*
 PER CURIAM.
 
 
 1
 Alex Restrepo appeals from a judgment of conviction of the United States District Court for the Southern District of New York (Shira A. Scheindlin, Judge) on four counts of an indictment for which he was extradited from Colombia: Count One charged racketeering in violation of 18 U.S.C. §§ 1961, 1962(c); Count Two charged racketeering conspiracy in violation of 18 U.S.C. § 1962(d); and Counts Twelve and Thirteen charged murder in aid of racketeering in violation of 18 U.S.C. §§ 2, 1959(a)(1). Following his conviction, the District Court sentenced Restrepo principally to life imprisonment.
 
 
 2
 Restrepo raises two arguments on appeal. First, he contends that his sentence violated the terms of a diplomatic note provided by the United States to Colombia during the extradition process that contained certain assurances concerning the possibility of a life sentence. Second, he argues that at trial the District Court improperly admitted evidence of uncharged crimes. Neither contention has merit.
 
 
 3
 In support of his first argument, Restrepo adverts to the "international principle of speciality," under which "an extradited defendant may not be tried for a crime not enumerated in the applicable extradition treaty." United States v. Campbell, 300 F.3d 202, 208-09 (2d Cir.2002). Based on international comity, the principle of speciality generally requires a country seeking extradition to adhere to any limitations placed on prosecution by the surrendering country. United States v. Andonian, 29 F.3d 1432, 1435 (9th Cir.1994). Because a violation of the extradition agreement may be an affront to the surrendering sovereign, "[t]he extradited individual ... can only raise those objections to the extradition process that the surrendering country might consider a breach of the extradition treaty." United States v. Diwan, 864 F.2d 715, 721 (11th Cir.1989). A district court's interpretation of an extradition agreement and application of the principle of speciality involve questions of law, and we therefore review them de novo. United States v. Saccoccia, 58 F.3d 754, 767 (1st Cir.1995).
 
 
 4
 In September 2000, Colombia issued a resolution granting Restrepo's extradition. The resolution provided, however, that Restrepo would not be extradited without assurances that, in the event the death penalty was imposed, it would be commuted. The United States responded in Diplomatic Note No. 1060 assuring Colombia that "the death penalty would not be sought nor imposed in this case" and noting that, under U.S. law, the executive branch possessed the "sole prerogative to seek the imposition of a lawfully applicable death penalty." In October 2000, the Colombian government sought the further assurance that Restrepo would not be subject to a sentence of life imprisonment. The United States responded in Diplomatic Note No. 1206, assuring Colombia that
 
 
 5
 should Mr. Restrepo be convicted of the offenses for which extradition has been granted, the United States executive authority, with the agreement of the attorney for the accused, will not seek a penalty of life imprisonment at the sentencing proceedings in this case. The Government of the United States also assures the Government of Colombia that, should the competent United States judicial authority nevertheless impose a sentence of life imprisonment against Mr. Restrepo, the United States executive authority will take appropriate action to formally request that the court commute such sentence to a term of years.
 
 
 6
 Id. (emphasis added). Colombia then extradited Restrepo.
 
 
 7
 Restrepo contends that Diplomatic Note No. 1206 constituted an absolute assurance that he would not be sentenced to a life term. As its text makes clear, that is not the case. The note expressly contemplated the possibility that a sentencing court might impose a term of life imprisonment and assured Colombia that, if that occurred, the executive authority of the United States would seek to have the sentence commuted to a term of years. As contemplated by Diplomatic Note No. 1206, the United States, through the U.S. Attorney for the Southern District of New York, requested that the District Court sentence Restrepo to a term of years. The Court, following 18 U.S.C. § 1959(a)(1) and the applicable Sentencing Guidelines, imposed a life sentence. Contrary to Restrepo's contention, the government fulfilled the commitment it made in Diplomatic Note No. 1206, and the Court was not obligated under that note to sentence Restrepo to a term of years.
 
 
 8
 In arriving at this conclusion, however, we disagree with the manner in which the District Court construed the Diplomatic Note at issue. The Court erroneously suggested that it could ignore the consequences of an extradition agreement between Colombia and the United States because the Judiciary is a branch of our tripartite government independent of the Executive branch.
 
 
 9
 The Judiciary is unquestionably independent of the Executive. However, the cauldron of circumstances in which extradition agreements are born implicate the foreign relations of the United States. In sentencing a defendant extradited to this country in accordance with a diplomatic agreement between the Executive branch and the extraditing nation, a district court delicately must balance its discretionary sentencing decision with the principles of international comity in which the rule of speciality sounds. Courts should accord deferential consideration to the limitations imposed by an extraditing nation in an effort to protect United States citizens in prosecutions abroad. Andonian, 29 F.3d at 1435. Moreover, in evaluating the exact limitations set by the extraditing nation, courts should not elevate legalistic formalism over substance. To do otherwise would strip comity of its meaning. See Texas Employers' Ins. Ass'n v. Jackson, 862 F.2d 491, 509 (5th Cir.1988) (Clark, C.J., concurring).
 
 
 10
 In sum, courts should temper their discretion in sentencing an extradited defendant with deference to the substantive assurances made by the United States to an extraditing nation. If anything, such deference may well allow the United States to secure the future extradition of other individuals because foreign nations would observe that the limitations they negotiated with the Executive branch in respect to the prosecution of their extradited citizens are being honored. This is not a surrender of the independence of the Judiciary to the Executive branch. To the contrary, it is the classical deference courts afford to the political branches in matters of foreign policy. See Regan v. Wald, 468 U.S. 222, 242, 104 S.Ct. 3026, 82 L.Ed.2d 171 (1984).
 
 
 11
 Having said that, we conclude that the District Court here did not abuse its discretion when it sentenced Restrepo to a life sentence. Diplomatic Note No. 1206 did not obligate the court to sentence Restrepo to a term of years.
 
 
 12
 Restrepo next argues that the District Court improperly admitted evidence of sixteen uncharged crimes, evidence he contends was irrelevant, cumulative, and prejudicial. It is well settled that in prosecutions for racketeering offenses, the government may introduce evidence of uncharged offenses to establish the existence of the criminal enterprise. See, e.g., United States v. Miller, 116 F.3d 641, 682 (2d Cir.1997) (rejecting argument that introduction of evidence of uncharged murders should have been excluded under Federal Rule of Evidence 404(b), because such evidence may be admitted to prove "the existence and nature of the enterprise and the conspiracy"). Moreover, where, as here, a conspiracy is charged, "uncharged acts may be admissible as direct evidence of the conspiracy itself." United States v. Thai, 29 F.3d 785, 812 (2d Cir.1994). In such a case, the admission of evidence of uncharged criminal activity is not considered other-crimes evidence subject to Federal Rule of Evidence 404(b). United States v. Carboni, 204 F.3d 39, 44 (2d Cir.2000) (stating that evidence of uncharged crimes not subject to Rule 404(b) "`if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial'") (quoting United States v. Gonzalez, 110 F.3d 936, 942 (2d Cir.1997)).
 
 
 13
 Here, the District Court concluded that evidence of the uncharged robberies was relevant to the existence of the racketeering enterprise and the conspiracy, and that the probative value of the evidence was not substantially outweighed by potential prejudice. See Fed.R.Evid. 403. We review this determination for an abuse of discretion. Miller, 116 F.3d at 682. We find no abuse of discretion here. The evidence admitted by the District Court was relevant to the central issues of the trial: the existence of the racketeering enterprise and the conspiracy. The uncharged conduct admitted by the District Court involved criminal conduct less inflammatory than the murder charged in the indictment. See, e.g., United States v. Livoti, 196 F.3d 322, 326 (2d Cir.1999) (finding no abuse of discretion in admitting evidence of uncharged act where it "did not involve conduct more inflammatory than the charged crime"). Scheindlin We have reviewed Appellant's other contentions and find them to be without merit.
 
 CONCLUSION
 
 14
 For the foregoing reasons, the judgment of the District Court is affirmed.
 
 
 
 Notes:
 
 
 *
 The Honorable Denny Chin, of the United States District Court for the Southern District of New York, sitting by designation