17-3301-cv
*DiPizio v. Empire State Development Corp., et al*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of August, two thousand eighteen.

Present:
> PIERRE N. LEVAL,
> GUIDO CALABRESI,
> DEBRA ANN LIVINGSTON,
> *Circuit Judges*,

---

ROSANNE DIPIZIO, Dreamco Development Corporation,

*Plaintiffs-Appellants*,

v.                                                                      17-3301-cv

EMPIRE STATE DEVELOPMENT CORP., Erie Canal Harbor Development Corporation, Thomas Dee, Assemblyman Sam Hoyt, Maria Lehman, The LiRo Group, Phillips Lytle LLP, Mark E. Smith, William J. Brennan, Esq.

*Defendants-Appellees*,

Travelers Casualty and Surety Company of America,

*Defendants*.

---

1

ANNA M. RICHMOND, Buffalo, NY, *for* Plaintiffs-Appellants.

WILLIAM J. BRENNAN, Phillips Lytle LLP, Buffalo, NY, *for* Defendants-Appellees Empire State Development Corp., Erie Canal Harbor Development Corporation, Thomas Dee, Assemblyman Sam Hoyt, and Mark E. Smith.

EDWARD S. BLOOMBERG, Phillips Lytle LLP, Buffalo, NY, *for* Defendants-Appellees William J. Brennan, Esq. and Phillips Lytle LLP.

MICHELLE A. HUTCHINSON, Brown Hutchinson LLP, Rochester, New York, *for* Defendant-Appellee Maria Lehman.

LEONARDO D'ALESSANDRO, Milber, Makris, Plousadis & Seidan, LLP, *for* Defendant-Appellee The LiRo Group.

Appeal from a judgment of the United States District Court for the Western District of New York (Geraci, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Rosanne DiPizio ("DiPizio") and Dreamco Development Corporation ("Dreamco") appeal from a September 26, 2017 final judgment of the United States District Court for the Western District of New York, granting the Defendants-Appellees' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). DiPizio's and Dreamco's amended complaint asserts eight causes of action under state and federal law, generally alleging that the Defendants-Appellees conspired to sabotage their involvement in a high-profile public works project in Buffalo, New York ("the Project"). On appeal, DiPizio and Dreamco challenge only the district court's dismissal of their § 1983 Equal Protection and conspiracy claims. We therefore treat their other claims as abandoned.

2

*See Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 565, 568 n.1 (2d Cir. 2011). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

### A. Standing

"We first address defendants' challenge to plaintiffs' standing to bring suit, a threshold matter we must resolve before reaching the merits of the trial court's decision." *Fair Hous. in Huntington Comm. Inc. v. Town of Huntington, N.Y.*, 316 F.3d 357, 361 (2d Cir. 2003). Standing consists of both Article III limitations and prudential limitations. *See United States v. Suarez*, 791 F.3d 363, 366–67 (2d Cir. 2015). "To establish standing under Article III of the Constitution, a plaintiff must allege '(1) injury-in-fact, which is a concrete and particularized harm to a legally protected interest; (2) causation in the form of a fairly traceable connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief.'" *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 110 (2d Cir. 2018) (quoting *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106–07 (2d Cir. 2008)). Prudential standing, in turn, "requires that an individual assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Suarez*, 791 F.3d at 367 (internal quotation marks omitted) (quoting *Rajamin v. Deutsche Bank Nat. Tr. Co.*, 757 F.3d 79, 86 (2d Cir. 2014)).

According to the Plaintiffs-Appellants' complaint, the Defendants-Appellees engaged in an "unlawful conspiracy" to "falsely blame and otherwise tortuously [*sic*] injure" them. App'x at 106. Their complaint alleges that, as a result of these actions, "Dipizio[] was wrongly vilified and" both DiPizio and Dreamco "suffered significant financial damages." App'x at 107. Furthermore, the complaint alleges that two of the Defendants-Appellees terminated non-party DiPizio

Construction Company ("DCC")'s contract with the Erie Canal Harbor Development Corporation ("Erie") "to cause harm to DiPizio personally, against whom they harbored strong personal animus and a discriminatory bias because she was a woman in their world." App'x at 155. Finally, the complaint alleges that, as a direct result of these actions, "DCC terminated Dreamco's contract for the Project as there was no longer a need for DiPizio's services." *Id.* As described below, these allegations do not suffice to establish plausible § 1983 Equal Protection and conspiracy claims. However, we conclude that they nonetheless suffice, albeit narrowly, to allege standing. *See Harry*, 889 F.3d at 110 ("It is well established in principle that the pleading standard for constitutional standing is lower than the standard for a substantive cause of action."); *id.* at 110–11 ("While the pleading of a cause of action must 'possess enough heft to show that the pleader is *entitled to relief*,' to plead standing, the pleader need only show that allowing her to raise her claim in federal court would not move so beyond the court's ken as to usurp the power of the political branches." (internal citation omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)))). The Plaintiffs-Appellants have alleged Article III standing because they allege that: (1) they have suffered an injury in the form of lost wages; (2) their injury is fairly traceable to the Defendants-Appellee' actions, because there is a "causal nexus"—albeit an "indirect[]" causal nexus— between the Defendants-Appellees' actions and their injury, *Chevron Corp. v. Donziger*, 833 F.3d 74, 121 (2d Cir. 2016) (first quoting *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013), then quoting *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 44 (1976)); and (3) the Plaintiffs-Appellants' injury would be redressed by a favorable decision in the form of compensation.[1] *See*

---

[1] The fact that the Plaintiffs-Appellants' injury was *most* directly traceable to DCC, a non-party, is not dispositive. "A defendant's conduct that injures a plaintiff . . . after intervening conduct by [a third party], *may* suffice for Article III standing," as long as the plaintiff's injuries were ultimately "a *consequence* of the actions of the defendant" even if not a *direct* consequence. *Chevron*, 833 F.3d at 121 (emphasis added) (quoting *Rothstein*, 708 F.3d at 92).

4

*Harry*, 889 F.3d at 110. Furthermore, the Plaintiffs-Appellants allege that they were the direct targets of the Defendants-Appellees' unlawful conspiracy, concocted for the sole purpose of harming them. They are therefore asserting their own rights and interests rather than a third party's. *See Suarez*, 791 F.3d at 367. Accordingly, the Plaintiffs-Appellants have sufficiently alleged standing to bring this suit.

### B. § 1983 Equal Protection and Conspiracy Claims

"We review appeals from motions to dismiss under Rule 12(b)(6) (failure to state a claim) de novo." *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018). "To state a claim under § 1983, a plaintiff must allege two elements: (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (internal quotation marks omitted). For the first prong, "a plaintiff's 'equal protection claim parallels his Title VII claim'" (except that a § 1983 claim, unlike a Title VII claim, can be brought against a subordinate who committed the discriminatory act, as opposed to only against the employer). *Id*. at 88 (quoting *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004)). Thus, in order to survive a motion to dismiss, a § 1983 plaintiff "must plausibly allege a claim under the same standards applicable to a Title VII claim—and that the adverse action was taken by someone acting 'under color or state law.'" *Id*.

In *McDonnell Douglas*, the Supreme Court adopted a three-stage, burden-shifting framework for analyzing employment discrimination cases under Title VII. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, a plaintiff establishes a *prima facie* case of discrimination by showing "(1) that she is a member of a protected class, (2) that she was qualified for the position she sought, (3) that she suffered an adverse

employment action, and (4) [that she] can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2015) (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981)). Once a plaintiff has established a *prima facie* case, "a presumption of discriminatory intent arises in her favor." *Id.* "The burden then shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for the disparate treatment." *Vega*, 801 F.3d at 83 (citing *McDonnell Douglas*, 411 U.S. at 802). Once the defendant meets this burden, the presumption "drops out of the picture" and the *McDonnell Douglas* framework "is no longer relevant." *See Littlejohn*, 795 F.3d at 307 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993)). The reason for the Supreme Court's adoption of temporary minimal standards for the *prima facie* case is to avoid having trial courts dismiss discrimination cases for failure to plead sufficient facts before the defendant articulates its justification for the adverse action. *See id.*

This case is not the typical employment discrimination case, where "fairness require[s] that the plaintiff be protected from early-stage dismissal for lack of evidence demonstrating the employer's discriminatory motivation before the employer set forth its reasons for the adverse action it took against the plaintiff." *Id.* at 307. In this case, DCC and Erie have been litigating suits related to the Project for years. DCC has filed four state court lawsuits against Erie stemming from its termination on the Project. In the main lawsuit, which DCC filed against Erie in New York state court on May 13, 2013, DCC sought, *inter alia*, damages related to the termination of the March 30, 2012 construction agreement (the "Construction Agreement") between DCC and Erie. Rosanne DiPizio was the sole representative of DCC in the main lawsuit, and she sat at plaintiff's counsel table for every session of the hearing. Therefore, Plaintiffs-Appellants have had extensive opportunity for discovery, to gather facts in order to meet their "minimal" burden to "suggest[] an

6

inference that the employer acted with discriminatory motivation." *Littlejohn*, 795 F.3d at 307. Moreover, in the course of litigating these lawsuits, Erie has proffered its "legitimate, nondiscriminatory reason[s]" for terminating DCC's contract, namely extensive construction delays and multiple attempts by DCC to deviate from requirements of the Construction Agreement. Therefore, even assuming that Plaintiffs-Appellants met their burden of pleading facts supporting a minimal inference of discriminatory motivation, Defendants-Appellees have given their explanation for the adverse action. Accordingly, *McDonnell Douglas*'s temporary presumption in a plaintiff's favor, which ordinarily "drops out of the picture" after a defendant proffers its reason, *Hicks*, 509 U.S. at 510-11, here had already dropped out of the picture as of the filing of this suit.

Because the *McDonnell Douglas* framework "is no longer relevant," *id*. at 510, we analyze the sufficiency of this complaint as we would any other. To survive a Rule 12(b)(6) motion, a complaint must provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Citizens United*, 882 F.3d at 380 (quoting *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 476 (2d Cir. 2009). For a complaint to "nudge [its] claims across the line from conceivable to plausible," it must "'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged." *Citizens United*, 882 F.3d at 380 (quoting *Twombly*, 550 U.S. at 556, 570). A complaint does not state a "plausible" claim if it merely asserts "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, although we are bound to accept all of the factual allegations in a complaint as true for purposes of a Rule 12(b)(6) motion,

we need not accept as true "legal conclusion[s]" in a complaint couched as "factual allegation[s]." *Id.* "[C]onclusory statements" in a complaint are not entitled to an assumption of truth. *Id.*

"[I]n an employment discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, . . . national origin [or other protected category] was a motivating factor in the employment decision." *Vega*, 801 F.3d at 86. Even assuming *arguendo* that DiPizio and Dreamco's complaint plausibly alleges that the Defendants-Appellees acted "under color of state law," we conclude that their complaint has not alleged specific facts that plausibly support a claim of a violation of the Equal Protection Clause.[2]

"Individuals have a clear right" under the Equal Protection Clause "to be free from discrimination on the basis of sex in public employment." *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 117 (2d Cir. 2004). However, a complaint cannot survive a Rule 12(b)(6) motion to dismiss if it consists solely of "an unadorned, the defendant-unlawfully-harmed me accusation." *See Iqbal*, 556 U.S. at 678. "To state a discrimination claim under the Fourteenth Amendment Equal Protection Clause . . . , plaintiffs must sufficiently allege that defendants acted with discriminatory intent." *Burgis v. New York City Dep't of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015). "A plaintiff can meet that burden through direct evidence of intent to discriminate, or by indirectly showing circumstances giving rise to an inference of discrimination." *Vega*, 801 F.3d at 87 (internal citations omitted). "[I]n making the plausibility determination, the court is to 'draw on its judicial experience and common sense.'" *Id.* at 86 (quoting *Iqbal*, 556 U.S. at 679).

---

[2] Although the district court spoke explicitly on the Plaintiffs-Appellants' failure to plausibly allege state action in their § 1983 Equal Protection claim, we note that the district court adopted in full Magistrate Judge Schroeder's Report and Recommendation which said: "Moreover, Rosanne DiPizio has failed to plead any facts supporting her allegation that she was treated differently from other similarly situated contractors because of her gender." App'x at 861.

8

Dreamco and DiPizio's complaint fails to state a plausible allegation of sex discrimination. Stripping away the complaint's "conclusory statements"—none of which are entitled to an assumption of truth, *see Iqbal*, 556 U.S. at 678—the complaint purports to show gender-based animus in (1) professional reports and assessments critiquing DCC's work on the Project, (2) Erie's denial of two requests by DCC to proceed with construction in ways that vary from the Construction Agreement, (3) DCC's replacement as general contractor with the allegedly politically connected and male-dominated Pike Company ("Pike"), and (4) internal, gender-neutral emails sent during DCC's tenure on the Project. None of these furnishes any support for the existence of sex discrimination, whether considered individually or in the aggregate.

First, Plaintiffs-Appellants allege that multiple reports or assessments, critical of DCC, were motivated by gender-based animus in that they show that the Defendants-Appellees attributed the Project's problems and delays to DiPizio and Dreamco in an effort to escape blame and to discredit Plaintiffs-Appellants. The assessments Plaintiffs-Appellants cite are (1) the January 24, 2013, Project Performance Report (the "LiRo Report") from The LiRo Group (Erie's Construction Manager), (2) the January 25, 2013, Memorandum (the "Phillips Lytle Memorandum") from Phillips Lytle (Erie's outside counsel), and (3) two emails from Ms. Lehman (an engineer) on January 29 and 30, 2013. Although each of these assessments is indeed critical of the work DCC was doing on the Project, none include even a semblance of gender-based reference, let alone animus. The Plaintiffs-Appellants may find the "critical tone" of these assessments objectionable, but Title VII—and, by extension, § 1983—does not "insulate an individual from criticism that is not based on an impermissible reason." *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 451 (2d Cir. 1999), *as amended on denial of reh'g* (Dec. 22, 1999). Moreover, both the LiRo Report and the Phillips Lytle Memorandum explicitly provide steps for Erie and/or DCC to take to "mitigate

9

delays in the completion of the [P]roject and to ensure the quality of work" (with respect to the LiRo Report), and to "attempt to have DCC comply with the contract" (with respect to the Phillips Lytle Memorandum), evidencing an attempt to *retain* DCC.

Second, Plaintiffs-Appellants allege that Erie's decisions not to allow DCC to vary from certain terms of the Construction Agreement evidence Erie's gender-based animus and desire to cause DCC, as represented by DiPizio, to fail. Specifically, Plaintiffs-Appellants allege that Erie (1) wrongfully refused DCC's request to dispose of soil in a location other than that specified in the Construction Agreement and (2) wrongfully refused DCC's request to use granite other than that specified in the Construction Agreement. We note that Erie has been granted summary judgment on the question of whether these requests by DCC were wrongfully denied. *DiPizio Constr. Co. v. Erie Canal Harbor Dev. Corp.*, 991 N.Y.S.2d 683 (N.Y. App. Div. 2014). The complaint asserts no facts that might plausibly support the contention that these decisions, justified by the Construction Agreement, were motivated by gender-based animus. Plaintiffs-Appellants further allege that their request to dispose of soil elsewhere was denied "despite [Erie] allowing the contractor working at the adjacent [p]roject to dispose of the same type of soil in the same facility that [Erie] refused to allow DCC to utilize." Br. for Pls.-Appellants at at 24. Although a plaintiff can indeed allege discrimination by asserting "more favorable treatment of employees not in the protected group," *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001), the complaint lacks any non-conclusory allegation that the "contractor working at the adjacent [p]roject" was male-dominated or had fewer women in leadership positions.

Nor does the allegation that Plaintiffs-Appellants were replaced by Pike support a claim of gender-based discrimination. The complaint indeed alleges that Pike is "politically connected," *see, e.g.*, App'x at 106, 112, but it does not assert facts supporting that Pike is "male-dominated."

10

Finally, the complaint attributes numerous allegedly gendered statements regarding DiPizio to certain Defendants-Appellees. Although many of these statements were critical, none possesses gendered "content or overtone." *See Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001). At most, they "indicate [a] general dislike for" DiPizio; they are not, standing alone, "objectively indicative of gender animus." *See Ford v. New York City Dep't of Health & Mental Hygiene*, 545 F. Supp. 2d 377, 389 (S.D.N.Y. 2008), *aff'd sub nom. Ford v. N.Y.C. Dep't of Health & Mental Hygiene*, 352 F. App'x 471 (2d Cir. 2009) (plaintiff provided no evidence that coworkers' abusive comments were based on gender). We are not persuaded otherwise by DiPizio's conclusory allegations. Criticism, even harsh criticism, does not give rise to an Equal Protection claim. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("Title VII . . . does not set forth 'a general civility code for the American workplace.'") (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998))).

Accordingly, the Plaintiffs-Appellants' complaint fails to state a plausible claim for disparate treatment on the basis of sex, so we affirm the district court's dismissal of the Plaintiffs-Appellants' § 1983 Equal Protection claim. For the same reason, we also affirm the district court's dismissal of the Plaintiffs-Appellants' claim of conspiracy under § 1983 to violate the Equal Protection Clause. *See Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) ("[A] § 1983 conspiracy claim must [plausibly allege] an actual violation of constitutional rights. . . . [T]he lawsuit will stand only insofar as the plaintiff can [plausibly allege] the *sine qua non* of a § 1983 action: the violation of a federal right.").

\* \* \*

11

We have considered DiPizio's and Dreamco's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk
