23-7195
*United States v. Cortorreal*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 31st day of October, two thousand twenty-four.

Present:
> GERARD E. LYNCH,
> MICHAEL H. PARK,
> EUNICE C. LEE,
> *Circuit Judges.*

---

UNITED STATES OF AMERICA,

*Appellee,*

v.                                                                        23-7195

EDWIN CORTORREAL,

*Defendant-Appellant*[†]

---

FOR APPELLEE:                          COURTNEY HEAVEY, Ni Qian, Matthew Andrews, and Nathan Rehn, Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

---

[†] The Clerk of Court is respectfully directed to amend the caption accordingly.

FOR DEFENDANT-APPELLANT: BENJAMIN SILVERMAN, Law Office of Benjamin Silverman, New York, NY, and Jonathan Langer, Law Office of Jonathan Langer, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Caproni, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Edwin Cortorreal challenges the district court's denial of his motions to dismiss the indictment and to cap his sentence at 30 years' imprisonment. On July 12, 2017, a grand jury returned a superseding indictment charging Cortorreal with five counts, including participating in a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d); murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and (2); and the use of a firearm resulting in death in connection with racketeering conspiracy, murder, and narcotics conspiracy, in violation of 18 U.S.C. §§ 924(j)(1) and (2). At the time of the indictment, Cortorreal was residing in the Dominican Republic. He was extradited to the United States on January 31, 2020.

On May 28, 2021, Cortorreal moved to dismiss the indictment, arguing that the delay between his indictment and his extradition to the United States violated his Sixth Amendment right to a speedy trial. The district court denied the motion on March 7, 2023. In April 2023, Cortorreal was convicted by a jury after a one-week trial. Both before and after his conviction, Cortorreal moved to cap his sentence at 30 years' imprisonment based on an extradition decree signed by the President of the Dominican Republic. The district court denied the pretrial motion without prejudice. After Cortorreal renewed the motion post-trial, it denied the motion again.

2

The district court sentenced Cortorreal to a mandatory minimum term of life imprisonment. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review the district court's weighing of the factors relevant to a Sixth Amendment speedy trial objection for abuse of discretion. *United States v. Williams*, 372 F.3d 96, 112-13 (2d Cir. 2004). A district court abuses its discretion when it "(1) base[s] its ruling on an erroneous view of the law, (2) [makes] a clearly erroneous assessment of the evidence, or (3) render[s] a decision that cannot be located within the range of permissible decisions." *United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021).

"A district court's interpretation of an extradition agreement and application of the principle of speciality involve questions of law, and we therefore review them *de novo*." *United States v. Baez*, 349 F.3d 90, 92 (2d Cir. 2003).

## I.      Motion To Dismiss the Indictment

Criminal defendants "shall enjoy the right to a speedy . . . trial." U.S. Const. amend. VI. "The Supreme Court has identified four factors that must be balanced when considering whether the right has been violated: '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" *United States v. Moreno*, 789 F.3d 72, 78 (2d Cir. 2015) (quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). "The first factor, the length of delay, also operates as a threshold inquiry." *Id.* A court "will only consider the other *Barker* factors when the defendant makes a showing . . . that the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay." *United States v. Ghailani*, 733 F.3d 29, 43 (2d Cir. 2013) (cleaned up). Once the full *Barker* analysis is triggered, "no one

3

factor is 'a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial,' and all 'must be considered together with such other circumstances as may be relevant.'" *Moreno*, 789 F.3d at 78 (quoting *Barker*, 407 U.S. at 533).

Here, the district court did not abuse its discretion in denying Cortorreal's motion to dismiss the indictment on speedy trial grounds. The government does not dispute that the length of time in this case between indictment and extradition is sufficient to trigger further inquiry under *Barker*. But a "delay, no matter how lengthy, 'cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria.'" *United States v. Cabral*, 979 F.3d 150, 157 (2d Cir. 2020) (quoting *Doggett v. United States*, 505 U.S. 647, 656 (1992)).

The district court did not err in finding that the other *Barker* factors weighed against dismissal. *Barker*'s second factor, the reason for the delay, "is often critical." *Cabral*, 979 F.3d at 158 (internal quotation marks omitted) (citing *Moreno*, 789 F.3d at 79). The district court engaged in a detailed analysis of the reasons for the delay and properly found that the delay was justified. For example, the government was required by DOJ policy to consult with the Capital Case Section because Cortorreal and his co-defendants were charged with capital-eligible offenses. The decision whether to seek the death penalty is a "complex and appropriately deliberative process." *United States v. Aquart*, 92 F.4th 77, 97 (2d Cir. 2024) (internal quotation marks omitted). And Cortorreal's co-defendants specifically requested that the government not "fast-track" the decision to afford time for mitigation submissions. In addition, the extradition process requires "multiple levels of review and certification." A-239. "Where there is a reasonable explanation for a delay, its negative implications will be vitiated." *Garcia Montalvo v. United States*, 862 F.2d 425, 426 (2d Cir. 1988). Furthermore, it would have been futile to extradite

4

Cortorreal while the death penalty was still being considered, as "[i]t is DOJ practice not to seek extradition of any defendant from the Dominican Republic unless it can provide assurances to the Dominican Republic that it will not seek the death penalty." A-236; *see United States v. Diacolios*, 837 F.2d 79, 83 (2d Cir. 1988) ("Due diligence surely does not require the government to pursue that which is futile.").

The district court also properly found that even if some or all of the delay was not justified, there was no resulting prejudice to Cortorreal. He was not in custody, but at liberty in the Dominican Republic until September 2019. Cortorreal cites no concrete basis for finding that the delay prejudiced his defense, nor did COVID-19 restrictions substantially impair Cortorreal's trial preparations because he went to trial in 2023 after the restrictions were "lifted, or at the very least, significantly diminished." A-240. Finally, "overwhelming evidence" of Cortorreal's guilt was presented at trial, undermining his claim that witnesses might have had diminished memories. A-371; *see also United States v. Loud Hawk*, 474 U.S. 302, 315 (1986) (noting that a mere "possibility of prejudice [due to the absence or loss of memories of witnesses] is not sufficient to support respondents' position that their speedy trial rights were violated.").

## II.     Motion To Cap Sentence

"Based on international comity, the principle of speciality generally requires a country seeking extradition to adhere to any limitations placed on prosecution by the surrendering country." *Baez*, 349 F.3d at 92. "Although the rule of specialty is typically applied in cases where the defendant is tried for a crime not enumerated in the applicable extradition treaty or agreement, it also 'has application in the sentencing context.'" *United States v. Suarez*, 791 F.3d 363, 366 (2d Cir. 2015) (quoting *United States v. Cuevas*, 496 F.3d 256, 262 (2d Cir. 2007)).

5

Because extradition agreements "implicate the foreign relations of the United States," a district court in sentencing a defendant extradited to this country "delicately must balance its discretionary sentencing decision with the principles of international comity in which the rule of speciality sounds." *Baez*, 349 F.3d at 93.

The rule of speciality has been "viewed as a privilege of the asylum state, designed to protect its dignity and interests, rather than a right accruing to the accused." *Shapiro v. Ferrandina*, 478 F.2d 894, 906 (2d Cir. 1973). We have thus held that a defendant "would only have prudential standing to raise the claim that his sentence violated the terms of his extradition if the [surrendering government] first makes an official protest." *Suarez*, 791 F.3d at 367. It is "the offended state[] which must in the first instance determine whether a violation of sovereignty occurred, or requires redress." *Id.* (quoting *United States ex rel. Lujan v. Gengler*, 510 F.2d 62, 67 (2d Cir. 1975)).

The district court did not err in denying Cortorreal's motion to cap his sentence at 30 years' imprisonment because Cortorreal has no standing to enforce the terms of the extradition decree. "[A]bsent protest or objection by the offended sovereign, [a defendant] has no standing to raise the violation of international law as an issue." *Suarez*, 791 F.3d at 367 (quoting *United States v. Reed*, 639 F.2d 896, 902 (2d Cir. 1981)). Here, the Dominican Republic has not sought to enforce any sentencing cap.

Cortorreal argues that the decree here confers standing on him because it was drafted for his benefit. But that argument "conflates two distinct concepts: treaty language directly benefiting private persons, which international agreements regularly feature; and treaty language indicating that the intent of the treaty drafters was that such benefits could be vindicated through

6

private enforcement, which is far less common." *United States v. Garavito-Garcia*, 827 F.3d 242, 247 (2d Cir. 2016) (cleaned up). The decree here contains no language granting Cortorreal any right of enforcement absent an objection from the Dominican Republic.

In any event, Cortorreal's argument would fail even if he had standing to raise it because the United States made no assurances to the Dominican Republic concerning the length of his sentence. A district court is under "no obligation" to limit a defendant's sentence when the "United States never made any substantive assurances to the Dominican Republic that if extradited and convicted, [the defendant] would not be sentenced to a term of more than 30 years' imprisonment." *Cuevas*, 496 F.3d at 263–64.

We have considered all of Cortorreal's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

7